### BEERS *against* St. John and others.

Where it appeared, on a motion for a new trial, that a tenant for years took down and removed a shop standing on the leased premises, which had gone wholly or partially to decay, and erected on its foundation another shop, for the same purposes; but it did not appear to what extent the old shop was dilapidated; nor in what condition it was, when the tenant went into the occupation of the premises on which it stood; nor what were the terms of the lease under which he held; nor under what circumstances the old shop was removed, whether with or without the consent of the owner; nor was it stated in the motion, that the point was raised on the trial, that the property in the new shop was not vested in the tenant, by reason of waste, either in erecting it, or in removing the old one, or in the use of a portion of the old shop in the erection of the new one; it was held, 1. that the motion presented the facts in the case too loosely and imperfectly to enable this court to decide, whether, in the removal of the old shop, the tenant was, or was not, *guilty* of waste; 2. that the point referred to not having been made on the trial, it would not even be considered, by this court.

A tenant for years has a right to remove, during the term, but not afterwards, a building erected by him on the leased premises, for the purpose of carrying on his business.

Where a tenant for years takes down and removes an old shop standing on the leased premises, and erects a new one on its foundation, for the same purposes, the use of a portion of the materials of the old shop in the construction of the new one, by such tenant, will not in law vest the title to the latter in the owner of the former, if the new shop is a different and distinct building from the old shop, and not the old one repaired, or reconstructed; the title to the new shop, in such case, turning on the question whether it is substantially and essentially the same building as the old one.

Where a building was erected, by a tenant for years, partly on the land of *A,* his lessor, and partly on the adjoining land of *B,* a stranger, and so remained after the expiration of the lease; it was held, that although *B* had a right to remove that part of such building which rested on his own land, he had no right to remove that part which was affixed to the freehold of *A.*

THIS was an action of trespass. The declaration contained two counts. The first charged a pulling down and destruction of a certain shop or out-house. The second alleged the breaking into and entering upon the land of the plaintiff, and pulling down and destroying the said shop.

The cause was tried, on the general issue, at *Fairfield, February* term, 1844, before *Storrs,* J.

The plaintiff claimed title to the land and shop described in the second count of the declaration, by deed from *Nathan Beers,* dated *October,* 1841. The defendants justified under and as the servants of *Edwin St. John,* who, it was admitted, owned a mill-site adjoining the premises. The premises and

mill-site, prior to the year 1835, had been owned by *Joseph St. John*, who, on the 22d of *April*, 1835, conveyed the premises of the plaintiff to *Nathan Beers;* and after the decease of *Joseph St. John*, the mill-site was distributed to his daughter *Elizabeth*, and conveyed by her to *Edwin St. John.* *Beers* occupied the mill-site, for several years, for his own use, for manufacturing purposes, while it belonged to *Joseph St. John* in fee; and during this period, there was an old shop standing on it and belonging to it, which had gone, wholly or partially, to decay. This *Beers* took down and removed, and erected the shop mentioned in the declaration, for the same purposes, covering its foundation and extending beyond it.

The defendants claimed to have proved, that the old shop was the property of the owner of the mill-site; that *Beers* erected the shop in question as a substitute for the old one; and that it was composed chiefly of the materials of the old one.

The plaintiff claimed to have proved, that while *Beers* so occupied the mill-site, and when he built the shop in question, he was a tenant for years of the mill-site under *Joseph St. John;* that the shop in question was chiefly built of new materials, a small portion only of the materials of the old shop being used in constructing it; and that it was not built as a substitute for the old one. It did not appear, that there was any express agreement or understanding between *Joseph St. John* and *Beers,* in relation to this matter.

The defendants claimed and requested the court to charge the jury, that if they should find, that any considerable portion of the materials of the old shop were used in the construction of the shop in question, and that it was erected by *Beers*, as a substitute for the old one, the title to the shop in question would thereby vest in and belong to *Joseph St. John*, the owner in fee of the mill-site, and *Beers* had no right to remove it. The plaintiff claimed and requested the court to instruct the jury, that if *Beers* was in the occupancy of the mill-site, as a tenant for years under *Joseph St. John*, and, while so occupying it as such tenant, erected the shop in question; and that it was substantially a new shop, and not the old shop repaired or reconstructed, the use of a part of the materials of the old shop in the construction of it, would not vest a title to

*Fairfield,*
June, 1844.

Beers
*v.*
St. John.

it in the proprietor of the old shop ; and that *Beers, in such* case, had a right to remove the shop in question.

On this point, the court charged the jury, that if *Beers* erected the shop in question, while he was occupying the mill-seat, as a tenant for years under *Joseph St. John ;* and such shop was a new shop, different and distinct from the old one, and not the old shop repaired or reconstructed ; the title to the shop in question would not vest in *Joseph St. John,* the owner in fee of the mill-site, although a part of the materials of the old shop were used in the construction of the shop in question ; and in such case, *Beers* would have a right to remove the shop in question from the premises, during the continuance of the lease under which he occupied, but not after the tenancy ceased : but if the shop in question was not erected while *Beers* was such tenant under *Joseph St. John ;* or if it was not a new shop, and a different and distinct one from the old shop, but was the old shop repaired or reconstructed ; it would belong to *Joseph St. John,* and *Beers* would have no right to remove it.

It appeared and was admitted, that those in whom all the right, title and interest of *Nathan Beers* was vested, after the decease of *Joseph St. John,* and after the inventory of the estate was completed, but before distribution was made thereof, removed the shop in question from the place on said mill-site where it was first erected, towards that part of the premises which was afterwards conveyed to the plaintiff.

The plaintiff claimed to have proved, that the whole of said shop was so removed by *Beers,* before the expiration of the lease. The defendants claimed to have proved, that the whole of the shop was not removed from said mill-site, during the continuance of the lease, but that a part thereof was, after the expiration of the lease, left on the mill-site, the title to which had become vested in *Edwin St. John,* by whose authority and direction, the defendants justified the removal of the shop ; and that a part of the shop so left on the mill-site, was much in the way of *Edwin St. John,* and obstructed his enjoyment of the mill-site, and was a nuisance to him ; that he, in *July,* 1842, notified the plaintiff to remove the shop from said mill-site, by the 31st of *August* then next, and that if the plaintiff did not so remove it, he, *Edwin St. John,* should remove it from the place where it stood ; that the plaintiff did

not so remove it; and that the defendants were employed, by *Edwin St. John*, in *January*, 1843, to remove it; that they put rollers and timbers under it, for that purpose, and hitched a team to that portion of it which was on said millsite; and that, in so attempting its removal, the frame being old, the building came apart and fell down, and was then removed, by the defendants, in pieces. The defendants thereupon claimed, and requested the court to charge the jury, that if a portion of the shop was suffered by *Beers* to remain on the mill-site of the plaintiff, after the expiration of said lease, that portion became the property of *Edwin St. John;* and that if it was a nuisance to him, and obstructed him in the enjoyment of said mill-site, and he had given reasonable notice to the plaintiff to remove it, and the plaintiff had neglected to do so, he, *Edwin St. John*, had a right to remove, or to procure the defendants to remove, the whole of said shop from the place where it was standing; and this in the manner they had attempted to do.

*Fairfield,*
June, 1844.

Beers
*v.*
St. John.

The plaintiff conceded, that if a portion of the building was suffered to remain on said mill-site, after the expiration of the lease, that portion would thereby become the property of *Edwin St. John;* and that he had a right to remove it, or to procure the defendants to remove it; and so the court instructed the jury.

But the plaintiff further claimed, and requested the court to charge the jury, that in that case, *Edwin St. John* would have no right to remove, or to employ and procure the defendants to remove, any part of said building, except the part so standing on the land of *Edwin St. John,* although he had given reasonable notice to the plaintiff to remove it, and the plaintiff had neglected so to do.

On this point the court charged the jury in conformity with the claim of the plaintiff.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a misdirection.

*Hawley* and *Butler*, in support of the motion, contended, 1. That upon the facts claimed by the defendants, the building in question belonged to the owner of the mill-site. That the owner of the land generally owns the structure upon it, will not be questioned. *Co. Litt.* 4. *a.* Now, in the first

*Fairfield,*
June, 1844.
————
Beers.
*v.*
St. John.

place, this case was not within any of the admitted exceptions to the general rule. The tenant, to bring himself within the reason and spirit of the admitted exceptions, and the presumptions on which they are based, must show, that he erected the structure, during the term, of his own materials and at his own expense, to enable him, in a more beneficial manner, to enjoy the estate ; and that, after the removal, he will leave the estate as good as he found it. *Elwes* v. *Maw,* 3 *East,* 38. *Chitt. Contr.* 358. 361. *Grymes* v. *Boweren,* 6 *Bing.* 437. (19 *E. C. L.* 123.) In the case of improvements, the right of the tenant to remove them, depends upon his *presumed intent* in making them. *Winslow* v. *Merchants Insurance Co.* 4 *Metc.* 306. 311. But where the tenant pulls down an existing building, erected for and necessary to the enjoyment of the estate, which had partially gone to decay during his occupancy, without the consent of the lessor, and erects, at the same time, on the same foundation, a similar building, constructed in part of the same materials, and intended for a similar continued enjoyment of the estate ; and the removal of it will prejudice the estate, and leave it in a different condition from that in which it was, when entered upon, or when the former building was pulled down ; he is not within the reason and spirit of any exception which has been admitted, or can be safely admitted. The intent must be presumed to have been, to erect the new building as a *substitute* for the old one ; and this for the benefit of the estate, as well as of himself. The tenant is benefitted, by the improvements, during the term ; but after the term, the benefit, if any remains, goes to the landlord exclusively. *Mumford* v. *Brown,* 6 *Cowen* 475.

Secondly, it is *waste* for a tenant to pull down an old building, unless he builds another in its place. *Co. Litt.* 53 *a.* *Cruise's Dig. tit.* Estate for life. *s.* 13. 14. 24. *Bac. Abr. tit.* Waste. C. If the tenant reëdify, it is not waste ; and the reason is, that the new building becomes the property of the owner of the soil. At any rate, an intent to commit waste will not be presumed, in order to let in a presumption of an intent to reëdify for his own benefit exclusively.

Thirdly, if the presumption be not as claimed by the defendants, it is certainly possible, that a tenant, who has for a long time occupied a mill-site and an accessory building, and

expects to continue in the occupation thereof, may prefer to erect a new building in preference to repairing the old one, or for the purpose of having more room, and intend it to be in place of, or a substitute for, the old one; and it should have been left to the jury to find whether this was a substitute or not.

2. That the court should have charged the jury, that if they should find the facts as claimed by the defendants, they had a right to attempt the removal of the shop, and to remove it, in the manner they did. If it was so far personal property that it could be removed from the mill-site, it remained such, not having been fixed, in any manner, to the realty, and could not be lawfully severed, and removed in part. But if otherwise, and the building was wrongfully left in part on the premises of the defendants, and was a *nuisance* there, they had a right to remove the whole; they could not safely remove it in any other manner. The nature of the thing constituting the nuisance, is to be considered. That which is naturally divisible, may be removed in part; but a shop can not be so removed.

*Bissell* and *Dutton*, contra, insisted, 1. That the question whether this was a new building, which was to be removed at the end of the term, or an old building repaired only, and of course not to be removed, was fairly and properly submitted to the jury. The defendants have nothing to complain of, on this ground, except that the verdict is against them.

2. That the defendants, under the circumstances of the case, had no right to remove any part of the building in question, except the part standing on the land of *Edwin St. John.* They are without excuse for trespassing upon the plaintiff's freehold. The building, before any part of it was removed, fell down and came to pieces. The defendants could then have easily carried off the pieces lying on *Edwin St. John's* land, without disturbing the plaintiff's part.

3. That no other points were made on the trial; and this court will not go into the inquiry whether the improvements upon the shop constituted *waste* in the tenant. It is enough for this court to revise the points made below.

STORRS, J. The principal point, which has been made before us, by the defendants, and on which a new trial is claim-

ed, is, that the acts of *Nathan Beers*, under whom the plaintiff claimed, constituted *waste ;* and that therefore, the said *Nathan*, and the plaintiff under him, acquired no title to the shop in question, erected by him partly on its site, and that the jury should have been so instructed. It not only does not appear on the motion, that any such point was made on the trial, but it is not necessarily or fairly presented by the facts, as they are claimed to have existed in the case. Indeed, on a fair construction of the motion, the case was there placed on entirely different grounds. The facts detailed in the motion as the foundation for the claims of the parties, are stated too loosely and imperfectly to enable this court to decide intelligently, whether in the removal of the remains of the old shop, the said *Nathan* was, or was not, guilty of what is termed *waste ;* or indeed, to admit of the belief, that any such claim was made on the trial. In determining whether their removal constituted waste, it would, or might, be a material inquiry, to what extent the building was dilapidated. It might have gone to decay, to so great a degree, as to render it entirely valueless and unfit for use or reparation, or only so little that it might be restored by slight repairs. On this point, the case, and it may be added, the proof also, was entirely indefinite. The motion states only, that it had gone, wholly or partially, to decay. It might also be necessary that it should appear what the condition of the building was, when the said *Nathan*, as tenant, went into the occupation of the premises on which it stood. It may be conjectured, that it was then tenantable ; but if a material inquiry, it was one to be submitted to the jury. The terms of the lease, under which the tenant held, might also be important. On these subjects the motion was silent, and no proof was adduced : neither does it appear, under what circumstances the old shop, or its remains, were removed ; or that there was not evidence to show, that it was removed with the consent of the owner ; in which case, it would not be claimed, that its removal constituted waste. And it is not stated in the motion, that the point was raised on the trial, that the property in the new shop was not vested in the said *Nathan*, by reason of waste, either in erecting it, or in removing the old one, or of the use of a portion of the old shop in the erection of the new. If, indeed, such a claim had been made, it is very difficult to see how the

court below could, on the facts stated in this motion, determine whether waste had been committed, by said *Nathan*. But it is sufficient to say, that as this question was not made, it cannot be considered by us here.    This court has inflexibly adhered to the rule of 1826 ; (6 *Conn. R.* 327.) and has repeatedly decided under it, that no point shall be considered on a motion for a new trial, not made on the trial below.    7 *Conn. R.* 399.    8 *Conn. R.* 236.    10 *Conn. R.* 263. 499. 11 *Conn. R.* 388.    13 *Conn. R.* 361.

It appears on the motion, that the first question between the parties on the trial, was, whether the plaintiff, claiming, by conveyance from the said *Nathan*, a title to the shop erected by the latter, was the owner of said shop, when he, the plaintiff, removed it from the premises of which the said *Nathan* was the lessee; and that was made to depend wholly on the inquiry, whether the use, by the said *Nathan*, of a portion of the materials of the old shop in the erection of the new shop, vested the title to the latter in the proprietor of the former.    That was the circumstance, in connexion with the further claim that the new shop was erected as a substitute for the old one, on which the defendants relied to make out a title in *Edwin St. John*, under whom they justified, to the new shop.    There does not appear to have been any claim, that the plaintiff's grantor might not lawfully have removed an entirely new building erected by him on the leased premises, for the purposes of his trade ; or that the plaintiff, his grantee, would not have such right.

The defendants' claim was, that the use of any considerable portion of the materials of the old shop in the construction of the new, vested the title to the new shop in the owner of the old one.    The principle, of which no complaint is made, was stated to the jury, that a tenant for years has a right to remove, during the continuance of the term, but not afterwards, a building erected by him on the leased premises, for the purpose of carrying on his trade.    They were also instructed, that the use of a portion of the materials of the old shop on the premises, in the construction of the new one, by the tenant, would not in law vest the title of the latter in the owner of the former, if said new building was a different and distinct one from the old shop, and not the old one repaired or reconstructed.    The title of the plaintiff to the new shop, thus

turned on the question whether it was substantially and essentially the same shop as the old one.   There is no doubt, that in determining this question, it was important and proper for the jury to consider what proportion of the materials of the one entered into the composition of the other, the character of those materials, the particular use that was made of them, and the place they occupied and the purposes they answered, in the newly erected building.   These circumstances would have a very important bearing on such an inquiry; but it is scarcely necessary to say, that there is no principle of law, by which, where the builder of a house or other thing, uses in part in its construction, even wrongfully, materials belonging to another person, the title to such house or other thing thereby necessarily vests in the owner of such materials. There may be cases where the owner of such materials would not lose his property in them; and it is not necessary to say, that there are none where, under the circumstances, he would not even acquire a title to the thing which they helped to compose: but it has not been claimed before us, that such circumstances existed in the present case.   It is, however, unnecessary to pursue this subject, as no question is made as to the correctness of the principle contained in this part of the charge; and the only objection made to it, (and which has been disposed of,) is as to its applicability to the case.

The remaining question respects the correctness of the charge as to the right of the defendants to remove that portion of the building in question, which stood on the premises of the plaintiff.   There was no question on this part of the case, but that portion of the building belonged to the plaintiff. As to that part of it, which may have been left, after the expiration of the lease, on the land of the said *Edwin St. John*, the defendants claimed, that it thereby became his property; and this was conceded, by the plaintiff; nor was it disputed, that the said *Edwin* had a legal right to remove, or authorize the defendants to remove, such part so owned by him.   The question was, whether the said *Edwin*, or the defendants by his authority, for the purpose of removing his part of said building, had a legal right to remove also that part of it, which belonged to the plaintiff; and the jury were instructed, that they had not.   This part of the case was treated as if there

was but one building composed of the two several parts which belonged respectively to the plaintiff and said *Edwin;* whereas it would be more proper, and also place the subject in a clearer light, to consider them as two distinct buildings, one standing on the land of the plaintiff, and the other on that of said *Edwin.* They were fixtures and a part of the realty, and the title to them followed the land on which they stood, and of which in law they constituted a part, although connected together and adjoining, as is frequently the case with buildings in large cities. It requires no argument or authority to show, that the right of one person to remove his own property, draws after it no right to remove that of another, whether adjacent or not. It is claimed, that this part of the case should have been put to the jury on the question whether the defendants did unnecessary damage to the plaintiff's building, in removing that of said *Edwin.* The question, however, was not, whether the defendants did, in a proper manner, that which they had a right to do; but whether they had any right whatever to do what they did : and it is clear, that no such right existed.

A new trial, therefore, should not be advised.

In this opinion the other Judges concurred.

New trial not to be granted.