MATILDA M. MOREY AND HUSBAND *vs.* JENNIE P. HOYT AND OTHERS, EXECUTORS.

New Haven & Fairfield Cos., Oct T., 1892. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and F. B. HALL, Js.

It is a general rule that, in the absence of a special agreement, a tenant under a lease for a specified term must remove his fixtures, if at all, during the term, or at farthest while he remains in possession under a right to still consider himself a tenant.

And, as a general rule, where the term is surrendered or is put an end to by the lessor under a forfeiture clause for some act or omission of the tenant, and the tenant is put out of and the lessor is put into possession, the right of the tenant to remove his fixtures, in the absence of a special agreement or special circumstances affecting the matter, is gone as completely as if the term had expired by lapse of time.

It is a further general rule that the creditor who attaches or levies upon removable fixtures as such, and the purchaser or mortgagee of them, must remove them from the premises while the tenant's right to remove them exists. When the right of the tenant to the fixtures ceases the rights of those claiming under him ordinarily cease.

But these rules have ordinarily no application to the case of structures that are not removable fixtures but mere chattels. Where the landlord and tenant have by their agreement treated as personal property an improvement which would otherwise be a part of the realty, it becomes personal property as between themselves.

Nor do they ordinarily apply to tenancies at will. Such a tenant has a reasonable time to remove his fixtures after his tenancy is determined,

and his creditors, attaching before such termination, have the same right of removal.

Where the lessor brought a suit under our statute with regard to summary process, for nonpayment of rent, and recovered possession of the leased premises, and there was no attempt to remove certain fixtures until after the tenant had been put out, it was held that, in the absence of any special agreement or special circumstances affecting the case, the rights of both the tenant and an attaching creditor were at an end and the fixtures belonged to the landlord.

The tenant could have saved his rights by paying the rent, and a court of equity would perhaps have aided him in doing so after the forfeiture.

And the court was inclined to think that a court of equity would have aided the attaching creditor in like manner.

In determining whether an article is a fixture the tendency of the modern cases is to hold the intention of the tenant to be of pre-eminent importance, and other elements as chiefly important so far as they are evidence of such intention.

But where the court charged the jury that the intention of the tenant to annex the chattel to the freehold must be proved beyond a doubt, and that the burden of proof upon this point and upon the question of adaptation and use rested upon the landlord, it was held that the charge was erroneous.

Removable fixtures may be attached or levied upon as personal property.

It is provided by Gen. Statutes, § 994, that in cases where the court acquires jurisdiction only by the attachment of property, with no service upon the defendant personally, and no appearance by him, the case shall be continued to the next term. Held that where such a case was not continued but went into judgment at the first term, the judgment was not void, but only erroneous.

Where machinery was attached and taken possession of by the officer and a keeper put over it by him, and was thus in his rightful, exclusive and undisturbed possession, it was held not necessary to the validity of the attachment that it should have been moved or that it should appear by the officer's return that it could not be moved without injury.

The oral admissions of a party against himself and those claiming under him, although relating to the contents of a writing, are primary evidence, and such admissions may be proved without producing the writing or showing that it cannot be produced.

Where property of no value for mere use, but only for sale or consumption, is taken and afterwards returned, and the owner seeks to recover in a suit only the damage suffered by reason of the taking and detention, mere interest on the value of the property at the time it was taken will generally be a complete indemnity. If the property has depreciated, the amount of the depreciation should be added to the interest.

[Argued November 2d, 1892—decided March 6th, 1893.]

ACTION to recover for personal property unlawfully taken

and detained by the defendants; brought to the Superior Court in Fairfield County, and tried to the jury, on a general denial, before *Robinson, J.* Verdict for the plaintiffs and appeal by the defendants for errors in the rulings and charge of the court. The case is fully stated in the opinion.

*J. H. Olmstead* and *N. R. Hart,* for the appellants.

*G. Stoddard* and *G. W. Wheeler,* for the appellees.

TORRANCE, J. This is an action to recover damages for the wrongful conversion and detention of personal property. It was originally brought against George A. Hoyt, but during its pendency he died and his executors entered to defend.

From the record it appears that Hoyt leased certain land in Stamford in this state, with buildings and machinery thereon, to a New York corporation for the term of five years from May 1, 1881. This was done by a written lease in the ordinary form, executed by both parties, and dated the 19th of January, 1881. The rent was made payable quarterly; if it remained unpaid three days after it became due the lease was to expire and terminate, and the lessor might at any time thereafter "re-enter said premises, and the same have and possess as of his former estate; and without such re-entry recover possession thereof in the manner prescribed by the statute relating to summary process." It contained the usual waiver on the part of the tenant of demand for rent, re-entry for condition broken, and of notice to quit. It also gave the corporation the privilege of buying the property leased within three years from May 1st, 1881, for ten thousand dollars, and the use of the premises, free of charge, for the purpose of repairs until May 1st, 1881.

Soon after the execution of the lease the corporation entered into possession of the premises and began to make repairs and alterations. It removed the boiler, steam engine and pump, which were then in the building, to the yard outside; and it made alterations in a brick building on the premises, and put therein a new engine, boiler, pump and heater,

of much greater power than the engine, boiler and pump removed. It continued in possession of the premises, carrying on business, until the spring of 1882, when it was put out of such possession as hereinafter stated.

On the 20th of March, 1882, all the property of said New York corporation situated on the leased premises, including tools and material of all kinds, was attached in a suit against it by one William B. Hollingshead, of said Stamford, brought to the Superior Court for Fairfield County. On the 18th of May, 1882, Hollingshead recovered judgment in the suit for a large sum. Under the execution issued on the judgment, the attached property was sold to the plaintiffs on June 16th, 1882. In the meantime the rent due under the lease on the 1st of February, 1882, remained unpaid, and for this cause Hoyt in April, 1882, brought an action of summary process against his tenant, and had a copy of the process left in service with the attaching officer. On the 15th of April, 1882, Hoyt was put into possession of the leased premises under an execution in the summary process action.

Before the trial court in the case at bar the main dispute between the parties was upon the question whether the engine, boiler, and other fixed machinery put into and used upon the leased premises by the tenant, were at the time of the execution sale in June, 1882, personal property of the tenant, or a part of the realty, and so the property of Hoyt. A great number and variety of errors are assigned in the reasons of appeal, but as the view we take of one of them renders it necessary to grant a new trial, the others will be considered very briefly, if at all.

The error referred to is in the charge of the court with regard to the effect of the proceedings in summary process.

From the evidence in the case, in one aspect of it, the defendants claimed in substance to the jury that the things included in the fixed machinery were at most removable fixtures, which, if they could be removed at all, could be removed only during the term of the lease; that the term expired by forfeiture in April, 1882; that the tenant had been

put out of, and Hoyt put into, possession of the leased prem-
ises on the 15th of that month; that there was no special
agreement between Hoyt and his tenant in regard to this
matter, nor any special circumstances which took the case
out of the ordinary rule; and claimed, as matter of law, that
the tenant's rights to the fixtures ended on the 15th of April,
and so likewise did the rights of the attaching creditor.

They asked the court to charge in accordance with these
claims. The court in substance charged that if Hoyt had
notice of the attachment, actual or constructive, the attach-
ment continued valid as against him, notwithstanding the
forfeiture and re-entry. In so charging we think the court
erred.

However much doubt and uncertainty there may be in the
law pertaining to " fixtures, " there are certain general prin-
ciples which have been fairly well established. One of these
is the general rule that, in the absence of a special agree-
ment, a tenant under a lease for a specific term must ordi-
narily remove his fixtures during the term, or at farthest
during the time he remains in possession of the leased prem-
ises under a right to still consider himself a tenant. If he
fails to do so his right to remove them is ordinarily gone.
This has been the law both in England, and in this country
generally, from a very early period.

We cite without quotation or comment a few of the many
cases recognizing this rule. *Leader* v. *Homewood*, 5 Com.
Bench, N. S., 546; *Loughran* v. *Ryan*, 45 N. York, 792; *Car-
lin* v. *Ritter*, 68 Md., 478; *Dingley* v. *Buffum*, 57 Maine,
381; *Torrey* v. *Burnett*, 38 N. Jer. Law, 457; *Youngblood* v.
*Enbank*, 68 Geo., 630; *Haflick* v. *Stober*, 11 Ohio, 482; *Burk*
v. *Hollis*, 98 Mass., 55; *Beers* v. *St. John*, 16 Conn., 322.

Another general rule quite well established is this:—
Where the term is surrendered, or is put an end to by the
lessor under a forfeiture clause for some act or omission of
the tenant, and he is put out of and the lessor is put into
possession, the right of the tenant to remove his fixtures, in
the absence of special agreement or special circumstances
affecting his right to remove, is gone as effectually as if the

term had expired by lapse of time. *Pugh* v. *Arton*, L. R., 8 Eq., 626 ; *Weeton* v. *Woodcock*, 7 Mees. & Wels., 14 ; *Davis* v. *Moss*, 38 Penn. St., 346 ; *Whipley* v. *Dewey*, 8 Cal., 36 ; *Kutter* v. *Smith*, 2 Wall., 491. And see the cases cited herein subsequently in support of the next point.

Furthermore, as a general rule, the creditor who attaches or levies upon removable fixtures as such, or the vendee or mortgagee of removable fixtures as such, must remove them from the premises while the tenant's right to remove them exists. In other words, the creditor, vendee and mortgagee, in the cases supposed, acquire no greater rights in this respect than the tenant under whom they claim.

If, pending the attachment or levy, or before the fixtures are severed and removed by the vendee or mortgagee, the rights of the tenant in and to the fixtures cease, then, as a general rule, the rights of those claiming under him also cease. This rule has been applied and recognized in numerous cases, and during the evolution and in the present condition of the law concerning fixtures seems to have been and still seems to be necessary and reasonable.

There are a few exceptions to these rules, or seeming exceptions, which we will briefly consider later on.

In England the above rule seems to be well established. In *Minshall* v. *Lloyd*, 2 M. & W., 450, the tenancy had been determined by a re-entry of the landlord for a forfeiture, and the question as to the title to certain removable fixtures arose between trustees of the tenant and the sheriff who had taken and removed the fixtures on execution against the tenant. The court, in speaking of the right of the trustees, says :—" They had only the same right of removal as the tenant, which certainly ceased in June, 1829, when the tenancy was determined. " In *Weeton* v. *Woodcock*, 7 M. & W., 14, a lessee erected during the term a steam boiler on the premises and subsequently became bankrupt; his assignees then entered and took possession, after which the lessor entered for a forfeiture ; afterwards the assignees who continued in possession removed and sold the boiler. The court held them liable to the lessor for the value of the boiler, and

uses this language :—" The rule to be collected from the several cases decided on this subject seems to be this, that the tenant's right to remove fixtures continues during his original term, and during such further period of possession by him as he holds the premises under a right to still consider himself as tenant. In the present case this boiler was removed after the entry for a forfeiture, and at a time after the assignees had ceased to have any right to consider themselves as tenants." To the same effect is the case of *Pugh* v. *Arton*, L. R., 8 Eq., 626, decided in 1875.

In this country the rule seems to be equally well established. In *Gaffield* v. *Hapgood*, 17 Pick., 192, the title to a removable fixture was in dispute between the lessor and the vendee of the tenant, who bought while the tenant was in possession but did not remove it during the tenancy. The court held that the tenant could not remove the fixture after the expiration of his tenancy, and that " the vendee could not be in any better situation than the tenant was." In *Talbot* v. *Whipple*, 14 Allen, 177, 182, the question arose between the lessor and a mortgagee of the tenant. During the term the tenant mortgaged a removable fixture, consisting of a large dry house and heavy machinery therein, to secure a debt of twelve hundred dollars. He subsequently abandoned the premises, and the lessor then entered and resumed possession. Shortly after this the mortgagee attempted to take the fixtures, but the court held that he was too late. The court say :—" The building and machine are to be regarded, not as movable chattels such as the tenant might have removed within a reasonable time after the expiration of his tenancy, but as belonging to that class of fixtures which, if removed at all, must be removed by the tenant from the realty during the term demised, or if suffered to remain annexed thereto after the expiration of the tenancy belong to the landlord as part of the freehold. It is hardly necessary to add that the plaintiffs can claim no better title to the property in controversy than that which was vested in the tenant under whom they claim as mortgagees. When the mortgage was made the building and machine were fixtures

annexed to the realty of the defendant by his tenant, and which the defendant then had an inchoate right to claim as part of the freehold, if not reasonably disannexed before the term was ended." In *Burk* v. *Hollis*, 98 Mass., 55, and *Cooper* v. *Johnson*, 143 Mass., 108, the same doctrine seems to be recognized. In *Thropp's Appeal*, 70 Penn. St., 395, the question arose between the lessor and levying creditors. Pending the levy, of which the lessor had no notice, the tenants surrendered possession to the lessor, who entered, and it was held that the rights of the creditors also ceased to exist. This case will be referred to later on, but upon the point now under consideration the court say :—" The sale not having been made until the termination of the lease by surrender of the term, the right to remove the building was gone as against the landlord." In *Donnewald* v. *Turner Real Estate Co.*, 44 Mo. Appeals, 350, the facts were as follows :—The defendant had leased premises to one Durgin, who during his tenancy had placed an engine and boiler therein. In February, 1888, Durgin abandoned the premises, and in May following the engine and boiler were bought by the plaintiff at a sheriff's sale upon an execution against Durgin. The court say :—" The right to levy upon and sell under execution a trade fixture belonging to the tenant must be exercised during the term or while the tenant remains in possession." It was held that the plaintiff had no title to the fixtures. In *Friedlander* v. *Ryder*, 30 Neb., 783, the facts were these :—A tenant during his term had erected a removable fixture. The rent being unpaid, the landlord brought an action to determine the lease and recover possession. On the 4th of April, 1888, the landlord obtained a judgment of restitution of possession, but the tenant was not dispossessed nor the landlord put into possession until two days later. Between the date of the judgment and the date of the dispossession a creditor of the tenant levied an execution on the fixture. In reference to this state of facts the court say :—" Under the lease the tenant had a right before the surrender of possession to remove any improvements made by him which are included under the head of

tenant's fixtures, but the tenant had no authority after the termination of his tenancy; in other words, the tenant could not re-enter to remove the fixtures after the surrender of possession to the landlord. In the case at bar the addition constructed by the tenant was not removed before the tenant was ousted under the writ of restitution. It is true that before the writ of restitution was served the execution was levied upon the addition, but we fail to see how that could affect the rights of the plaintiff. These creditors by the levy of their execution obtained no greater rights in the premises than had their debtors, the Hewitts. If the Hewitts had no right to enter and remove the property after they had been dispossessed, then it would seem clear that their creditors had no such right."

So far as we are aware this court has never had occasion to consider this precise question, and in view of this and of its practical importance we have felt justified in dwelling upon it at some length.

As before intimated, there are some cases which seem to be and perhaps are exceptions to one or more of these rules. In certain cases a formal voluntary surrender by a tenant has been held not to affect the rights of third parties to fixtures fairly acquired before the surrender. Such surrender is treated as a grant taken subject to the rights of third parties. *Shepard* v. *Spaulding*, 4 Met., 416; *Doe dem. Beadon* v. *Pyke*, 5 Maule & Selw., 146. In the latter case, which was the surrender of a life estate, the court said:—" It was urged that such a surrender would annihilate all interests demised under the lease. No authority, however, which goes the length of that position was adduced; and we consider it as clear law that, though a surrender operates between the parties as an extinguishment of the interest which is surrendered, it does not so operate as to third persons who at the time of the surrender had rights which such extinguishment would destroy, and that as to them the surrender operates only as a grant subject to their right, and the interest surrendered still lies for the preservation of their continuance." In the case of *London Loan & Discount Co.* v. *Drake*, 6 Com.

Bench, N. S., 796, a lessee for years mortgaged a tenant's fixtures and afterwards voluntarily surrendered his term to the lessor. It was held that the tenant could not by a voluntary surrender "derogate from his grant" to the mortgagee. The court said :—" The question is whether the mortgagee's right to sever the fixtures from the freehold is a right or interest, * * * and we are of opinion that it is. Certainly it is an interest of a peculiar nature, in many respects rather partaking of the nature of a chattel than of an interest in real estate. But we think it is so far connected with the land that it may be considered a right or interest in it, which if the tenant grant away, he shall not be allowed to defeat his grant by a subsequent voluntary act of surrender." In 1875 in the case of *Saint* v. *Pilley*, L. R., 10 Exch., 137, the same doctrine was recognized and applied.

It may well be that a formal voluntary surrender, which is in effect a grant, should not injuriously affect the rights of third parties previously and fairly acquired ; we have no occasion here to approve or disapprove of that doctrine. So too ordinarily these rules have no application to a case where the property in dispute is not a "removable fixture " but a mere chattel; as in the case of *O'Donnel* v. *Hitchcock*, 118 Mass., 401, where a creditor attaching during the tenancy, was allowed to remove, after it was determined, a structure which was held to be a "mere chattel."

They have usually no application in tenancies at will; as is shown in the case of *Doty* v. *Gorham*, 5 Pick., 487, where the court holds that such a tenant has a reasonable time to remove his fixtures after his tenancy is determined, and that his creditors attaching before such termination have the same right of removal.

They have no application to cases where the ordinary rights of landlord and tenant as to fixtures or their removal have been varied by agreement. "It is well settled that landlord and tenant may by their agreements treat as personal property improvements which would otherwise ·be part of the realty, and thus convert them into personal property as between themselves." *Fitzgerald* v. *Anderson*, 81 Wis.,

349. In *Thropp's Appeal*, *supra*, the court intimates that if the landlord had received notice of the levy, the right of the creditor would not have been affected by the subsequent voluntary surrender. It held that the failure to give notice was a failure to prosecute the levy with due diligence. We have no occasion at present to approve or disapprove of this dictum.

In the case at bar the court below, in that part of its charge which we are now considering, seems to have acted upon the dictum in *Thropp's Appeal*, although the facts were materially different. In that case there was a voluntary surrender; in the case at bar the tenant was dispossessed in an adverse proceeding in which the attaching officer as well as the tenant had been cited to appear.

Under the lease and statute relating to summary process the lessor had the right to put an end to the term and regain possession as he did. When he put the tenant out the right of the latter to remove fixtures, in the absence of any special agreement, and of any special circumstances which might be held to vary the general rule, was gone, and the right of the creditor to do so was also gone. It is difficult to see how the creditor in such circumstances could have any greater right than the tenant, or how the attachment with or without notice could affect injuriously the rights of the lessor under the lease and the law. The defendants, as the record shows, in one aspect of the case claimed that the things in question were fixtures, which the tenant could remove, if at all, only during the term; and they claimed that there was no special agreement between lessor and lessee as to this matter, and no special circumstances which prevented the tenant or the officer from removing them within the term, had they chosen to do so. As the jury might have found these claims to be true, we think they should have been instructed that, if they so found, the right of the attaching creditor was at an end and the fixtures belonged to the landlord. The tenant certainly could have saved his rights by paying the rent, and a court of equity would have aided him perhaps in doing so even after the forfeiture. We are also

inclined to think that a court of equity would have aided the attaching creditor in like manner.

However this may be, nothing of the kind was done or attempted to be done, nor was any attempt made by any one to remove the fixtures until more than two months after the tenant had been put out, and then we think it was too late. For these reasons we think that the charge was erroneous and that there must be a new trial.

What is said in this opinion upon the right of a tenant or his creditor to remove fixtures is limited to the facts as they appear in this special aspect of the case which we have been considering. The plaintiffs claim that a special agreement in the case at bar existed which varied the ordinary rights of landlord and tenant. Of the case in that aspect we have not been speaking.

The defendants in their reasons of appeal also insist that the court below, in effect, told the jury that the intention of the lessee in annexing the chattel to the freehold must be proved beyond a doubt, and that the burden of proof upon this point and upon the question of adaptation and use, rested upon the defendants. The charge is fairly susceptible of the construction here put upon it by the defendants, and, so construed, we think it clearly erroneous upon both points.

As this disposes of the case so far as this court is concerned, it is perhaps unnecessary to decide any other questions raised on the record, but as some of them may arise again if a new trial is had, and as they have been fully argued, we have concluded to express our views briefly upon some of them.

Upon the trial below the plaintiffs introduced, without objection, the record, execution and officer's return thereon in the Hollingshead case. The defendants asked the court to hold, and to charge the jury, that the record showed on its face that the Hollingshead judgment under which the plaintiffs claimed title was void. The court refused to so hold or charge. The specific claim of the defendants upon this point was that because the Superior Court did not continue the action in which the judgment was rendered as required by

statute, it had no jurisdiction to render the judgment. We think this claim is not tenable.

We concede that the judgment of a court of general jurisdiction may in a proper case be collaterally attacked for want of jurisdiction clearly shown by its own record. The defendants claim that the record in question shows no appearance by the defendant and no service of process save only by attachment of the estate of a non-resident, and hence no jurisdiction save over the property lawfully attached. If, for the purposes of the argument only, we concede this also, it by no means follows that because the court failed to continue the action, it lost jurisdiction. The court certainly had jurisdiction of the plaintiff in that action; and assuming for the present that the property of the defendant therein was lawfully attached, the court acquired jurisdiction over the property. Confessedly the court had jurisdiction over the questions it attempted to decide in that suit. Clearly then, to begin with the court had jurisdiction over the plaintiff, over the property of the defendant, and over the questions in controversy in such a proceeding, to enable it to render a judgment for the appropriation of that property. *Easterly* v. *Goodwin*, 35 Conn., 276; 1 Black on Judgments, § 229.

How then does the record show that it lost jurisdiction? By its failure to continue the action, say the defendants. We cannot assent to this. The statute does indeed require a continuance, as it does that a bond shall be taken before execution in such cases, but it nowhere expressly or by necessary implication says that the consequence of noncompliance shall be the loss of jurisdiction. The provisions referred to were made in favor of the parties and may be waived if they see fit. A noncompliance with them may be error which would entitle the party injured thereby to redress of some kind in a direct proceeding for that purpose, but we do not think it deprives or was intended to deprive the court of jurisdiction. Had the legislature so intended it would have said so plainly and not left the matter to doubtful in-

ference. At most the omission is an irregularity of procedure.

The defendants claim that the case of *Sanford* v. *Pond,* 37 Conn., 588, sustains their claim, and it seems to be based wholly on certain expressions in that case. This court there decided that Sanford, who laid claim to certain personal property solely by virtue of an attachment, had not attached the property in question. This disposed of the case, but, to save further litigation if possible, the opinion proceeds to discuss his interest in the property on the assumption of a valid attachment. His interest in such case was said to rest on his liability over to the creditor or the owner, and it was held that at the time he brought suit he was liable to neither.

The Skidmore case was the only one about which there could be any question. With reference to that the court says:—" The proceeding becomes a mere statutory proceeding for the appropriation of the property attached to the payment of the debt on which it is attached. This being so, every step required by the statute must be taken, precisely as an officer levying an execution on real estate must comply with every statutory requirement in the proceeding or no title will pass by the levy. Here a most important statute requisite was omitted and consequently a levy of the execution on the property would have been of no effect." Nowhere in that opinion does Judge FOSTER say that the judgment in the Skidmore case was void; indeed on page 595 he speaks of it as "erroneous," which is inconsistent with the view that it was void. He says expressly and plainly that the Barnes judgment was void, and if he had thought the Skidmore judgment void also in the same sense, he would have said so just as plainly. What he does say regarding the validity of the Skidmore judgment is in effect that the creditor could not hold the officer responsible for not serving an execution issued on a judgment which might be set aside for a manifest error therein. The case does not support the defendant's claim.

Although then the record in question shows a failure to continue the action, it is not for that reason void on its face.

The defendants further claim that the officer's return upon the writ of attachment in the record introduced, did not on its face show a valid attachment, because it did not state the fact that in the opinion of the officer the property could not be moved without manifest injury. The return on its face shows that the officer attached the property described therein and took it into his possession and put a keeper over it. It shows the officer in the actual, rightful, exclusive and undisturbed possession of the attached property. Under these circumstances it was not necessary to the validity of the attachment that the property should be moved or a reason given in the return why it was not. The charge of the court upon this point of which the defendants complain, even if erroneous did the defendants no harm.

The defendants further say that the court, instead of deciding upon the validity of the record as matter of law, allowed the jury to construe it. It is not at all clear that the court did this, but, if so, it did the defendants no harm, for the jury must have found simply what it was the duty of the court, as we have seen, to have directed them to find. *Doe dem. Strickland* v. *Strickland*, 8 Com. Bench, 724.

Hoyt had written a letter to his tenant to the effect that the tenant might make certain changes and alterations in and upon the leased premises, and that Hoyt would make no claim to any machinery which the tenant might put into or upon the same. The plaintiff called a witness who testified that at a certain interview between himself, Hoyt, and one of the plaintiffs, the witness, at the request of Hoyt, read aloud a portion of the letter. He was then asked to state the part which he had read aloud and in substance whether Hoyt had or had not admitted that the statements in such portion were true. The defendants objected to any oral statement of the contents of the letter, on the sole ground that such evidence was secondary and inadmissible until it had been shown that the letter itself could not be produced. The court admitted the evidence.

The evidence was claimed as an admission of the contents of a writing by one whose admissions were relevant. It was

claimed as primary and not secondary evidence. If it was primary evidence the objection taken is not tenable. The rule that the oral admissions of a party against himself and those claiming under him, although relating to the contents of a writing, are primary evidence, seems to be well established, whatever we may think of its wisdom. So far as we are aware this court has never had occasion to consider this rule, but elsewhere the weight of authority is in its favor. It is established in England, as shown by the authorities cited. "Primary evidence means the document itself produced for the inspection of the court, or an admission of its contents proved to have been made by a party whose admissions are relevant." Stephen's Digest, art. 64; *Earle* v. *Picken*, 5 Car. & P., 542; *Slatterie* v. *Poole*, 6 Mees. & Wels., 664; *The Queen* v. *Basingstoke*, 14 Q. B., 611; 1 Taylor's Evidence, § 410. And it seems to be the prevalent rule in this country. 1 Greenl. Ev. (15th ed.), § 96; *Smith* v. *Palmer*, 6 Cush., 513; *Loomis* v. *Wadhams*, 8 Gray, 557; *Blackington* v. *City of Rockland*, 66 Maine, 332; *Wolverton* v. *The State*, 16 Ohio, 173; *Edgar* v. *Richardson*, 33 Ohio St., 581; *Edwards* v. *Tracy*, 62 Penn. St., 374; *Taylor* v. *Peck*, 21 Gratt., 11.

The wisdom of this rule is questioned by Judge Taylor in his work on evidence, and from the cases cited in a note to the paragraph from Greenleaf cited above, it would seem that the courts in Ireland dissent from it, as do also the New York courts. The weight of authority, however, as before stated, seems to be in its favor, and we see no reason why it should not be applied in a case like the one at bar.

We think also that the testimony of Mr. Barmore was admissible upon the question of the intent of the tenant in placing the machinery upon the leased premises. *Linahan* v. *Barr*, 41 Conn., 472; *Seeger* v. *Pettit*, 77 Penn. St., 437.

The plaintiff claimed to have proved that certain of the articles taken and converted were substantially new. Mr. Hopkins was permitted to testify to the value of new articles of a similar kind. This evidence was, on the claim of the plaintiffs, clearly admissible.

One of the errors assigned is the action of the court in permitting Hollingshead's deposition to be read, to the effect that the agent of Hoyt made certain representations as to the condition of the machinery before the execution of the lease between Hoyt and the New York corporation. The claim of the defendants upon this point seems to be that the evidence in question was offered and received for the purpose of affecting in some way the written lease. It does not appear whether, at the time the representations were made, the lease was or was not executed, and therefore this assignment of error is without foundation. We also think the evidence was admissible for the purpose for which it was offered and received.

The defendants requested the court to charge the jury that the fixtures in question had, as matter of law, become part of the realty. What the precise facts were upon which this claim was based is nowhere clearly shown. On looking over the record it seems as if pretty much everything asserted on one side was denied by the other. The court committed no error under these circumstances in refusing to charge as requested.

The defendants claimed that the fixed machinery in question was a part of the realty and could only be attached as real estate. Where the right of attachment prevails it is clear law that " whatever may be sold under execution may be attached." Drake on Attachments, (4th ed.) § 244.

Now the fact that fixtures which a tenant has the right to remove may be levied upon under an execution as personal property is clearly established in many of the cases hereinbefore cited. It is also clearly established by the following authorities. Taylor's Landlord & Tenant, (6th ed,) 431; *Cooper* v. *Johnson*, 143 Mass., 108; *Overton* v. *Williston*, 31 Penn. St., 155; *Heffner* v. *Lewis*, 73 id., 302; *State* v. *Bonham*, 18 Ind., 231; *Lanphere* v. *Lowe*, 3 Neb., 131; *McNally* v. *Connolly*, 70 Cal., 3. It follows that in such cases the fixtures may be attached as personal property.

The defendants say that the court erred in charging, in the case of articles detained and subsequently returned, that

interest upon the value of such articles during the time of detention was an element of damage. It is to be observed with regard to this class of property that the plaintiffs were not seeking to recover its value, but simply the damage they had suffered by reason of the taking and detention; and that the property was of that class, so far as we can see, that has no value for use. It was useful only for sale or for consumption. "In many cases interest on the value from the time of the wrongful taking would be a proper measure. It would generally be so in all cases where the property detained was merchandise kept for sale, grain and all other articles of property useful only for sale or consumption. In such cases, if the owner recover the interest on the value of his property from the time he was deprived of it, he will generally have a complete indemnity, unless the property has depreciated in value, in which case the depreciation must be added to the interest on the value taken as it was before the depreciation, and the two items will furnish the amount of the damage." *Allen* v. *Fox*, 51 N. York, 562. The court below charged in accordance with the principle laid down in this case, and in doing so we think it did not err.

The defendants also complain that the court below in its charge laid undue emphasis upon the intention of the tenant as an element in determining whether a given article was a fixture or not. We think this complaint is without foundation. The other elements were given their due share of prominence. It is true that the court told the jury that the element of intention was of great importance, and used the word "superlative" in this connection. The charge upon this point, as a whole, however, we think gave to each element its due weight. After a somewhat extended survey of the authorities pertaining to the law of fixtures, we are inclined to agree with those which hold that as between landlord and tenant the clear tendency of the modern cases is to give prominence to the element of intention, and that other elements derive their chief value as evidence of such intention. *Hinkley & Egery Iron Works* v. *Black*, 70 Maine, 473; *Hopewell Mills* v. *Taunton Sav. Bank*, 150 Mass., 519. This

is in accordance, we think, with the principles recognized in
*Capen* v. *Peckham*, 35 Conn., 95, and *Linahan* v. *Barr*, 41
Conn., 473.

A new trial is advised for the reasons hereinbefore given.

In this opinion the other judges concurred; ANDREWS,
C. J., inclining to the opinion that the Hollingshead judg-
ment, under which the plaintiff claimed, should have been re-
garded as void, but fully concurring upon all the other points.

NOTE.—The reporter has adopted the practice, where, as in the foregoing
case, the husband is joined with his wife as a mere matter of form, and
she is the real party in interest, of giving prominence to her name as that
of the real plaintiff. In this way she can be spoken of throughout the
case as the plaintiff, instead of resorting to circumlocution to show that
she is referred to. It is hardly necessary even to mention the name of
the husband, as it would be assumed that he was made a formal party.

In this connection the reporter would make a kindred suggestion as to
deeds of real estate by married women. The statute (Gen. Statutes,
§ 2960,) requires only that conveyances by married women shall be "exe-
cuted by them jointly with their husbands." The almost universal prac-
tice is to have the husband stand as a grantor with the wife, joining in all
the covenants of the deed, and yet he has no interest in the land, or may
have none, and there is no reason for his becoming a covenantor. All
that is needed is his "execution" of the deed with her for the sake of
the validity which under the statute he thus gives to her execution of it.
It is the practice of the writer to make no reference to the husband in such
a conveyance until near its close, and then to insert before the attesting
clause these few words—"*A. B.*, husband of the said *C. D.*, executes this
conveyance jointly with her." He should then sign with her. It cannot
be doubted that this simple form is enough, and it falls in more directly
with the real object in view.                                    R.