The state of Connecticut instituted a civil action against the defendants, Richard Florence and Myrtle Florence, husband and wife, in which it alleged that Myrtle Florence was a patient and received treatment at the Norwich Day Care Center, a facility of a state humane institution. It also alleged that the defendants had been billed for that care and treatment and that, although requested to do so, the defendants had failed or refused to pay the balance due in the amount of $1332.50. There is an allegation that the named defendant husband received insurance benefits *Page 599 
covering partial payments for this case in the amount of $515. The state claims money damages or wage executions or both by way of relief.
The deputy sheriff's return recites that service was made on each defendant by leaving a copy of "the entire original process, writ, summons and complaint at the usual place of abode" of each defendant. A default judgment against the defendants was rendered on April 7, 1975. Some months later, on January 5, 1976, the named defendant, specially appearing by an attorney, filed a plea in abatement alleging that the court had no jurisdiction of the action because he did not, "as in said writ alleged, reside at the residence as shown on the sheriff's return, nor was there personal service at the time of the commencement of the suit." The state interposed a demurrer to the plea which alleged, inter alia, that the named defendant was precluded from raising the issue of jurisdiction because "the previous appearances of his counsel before the Court in requesting a continuance on at least three occasions constitute a general appearance by counsel,"[1] and which further alleged that "[t]he record shows abode service on the defendant husband which service was sufficient to obtain jurisdiction." On July 1, 1976, the state's demurrer was overruled. Thereafter, on December 1, 1976, the state filed a motion to expunge the plea in abatement. On February 8, 1977, the court denied the motion to expunge on the basis that the demurrer was determinative of the issue. Still later, on March 9, 1977, the judge who overruled the demurrer on July 1, 1976, filed a memorandum of decision on the *Page 600 
demurrer to the plea in abatement. Neither the judge who ruled on the demurrer nor the judge who denied the motion to expunge passed upon the question of the propriety of the filing of the plea in abatement or the subsequent pleadings after judgment had been rendered.
On March 10, 1977, the attorney for the state wrote to the court clerk requesting a ruling on its March 3, 1977 application for a wage execution that had been returned. On March 28, 1977, the state's application for a wage execution was denied in open court. The named defendant's attorney filed a motion, dated March 30, 1977, to stay execution of the wage attachment and on March 31, 1977, the court heard and granted that motion without notice to counsel for the state and without counsel for the state being present to object to its being granted.
The state has appealed, assigning error in the March 28, 1977 denial of its application for a wage execution, in the granting of the named defendant's motion for a stay of execution, in the overruling of the state's demurrer to the named defendant's plea in abatement and in the denial of the state's motion to expunge the plea in abatement. Its appeal alleges that the court had no jurisdiction to allow the named defendant's plea in abatement to be filed since judgment had already been rendered on April 7, 1975.
It has been held that unless the invalidity of a judgment appears on the face of the record the judgment is not vulnerable to collateral attack. Jensen v. Nationwide Mutual Ins. Co., 158 Conn. 251,260; Morey v. Hoyt, 62 Conn. 542, 554. To state it another way, unless the judgment is entirely invalid and that fact is disclosed by an inspection of the record itself, the judgment is invulnerable to indirect assaults upon it. Lampson *Page 601 
Lumber Co. v. Hoer, 139 Conn. 294, 297-98. In his treatise on judgments, Freeman points out that "[a]n important, very often a controlling, consideration bearing on the direct or collateral character of the proceedings relates to the legal authorization for the course taken. The law of every jurisdiction prescribes the manner in which litigants must proceed to correct, vacate, review or annul judicial decisions. It specifies the remedies to be invoked and the extent to which they are available. This being true, it is but reasonable to conclude that an assailant is pursuing a very direct attack when he strikes at the judgment with one of the procedural weapons thus placed at his disposal, and per contra that his assault is essentially collateral when attempted without such legal means." 1 Freeman, Judgments (5th Ed.) 306, p. 606. In the matter before us, the attack is collateral as not only is the alleged invalidity of the judgment not apparent on the face of the record, but the attack invokes matters dehors the record. The collateral attack cannot be successful under the circumstances. It is true that when the fact of lack of jurisdiction of the subject matter or of the parties is brought to the attention of the court, it is the court's duty to dismiss the case. Paiwich v. Krieswalis, 97 Conn. 123, 127-28. The party who undertakes to bring such a fact to the court's attention must, however, proceed in an orderly way and at a proper time. Id., 128. By statute and rule, a party who finds himself in the named defendant's position is not without remedy in attacking a judgment. For example, under General Statutes 52-212 such a defendant could have filed a motion to open and set aside the default judgment, or an appeal could have been taken to the Appellate Session of the Superior Court pursuant to General Statutes 52-6a (Rev. to 1977), or a direct proceeding seeking to set aside the judgment could have been undertaken. *Page 602 
We are not involved, however, with the adequate remedies which were available to this defendant to claim and establish the lack of proper service he is asserting. The named defendant has disregarded the sufficient means available to obtain relief and has resorted to the plea in abatement in an action already closed by judgment to attack that judgment. This procedure is similar to that unsuccessfully employed by the defendant in Paiwich v. Krieswalis, supra, where the validity of the proceedings was attacked by the filing of a motion to erase in an action that had already gone to judgment. Paiwich v. Krieswalis, supra, 126. We conclude that the plea in abatement to attack personal jurisdiction after the entry of judgment does not exist in our procedure.
While it is an accurate statement that when the court has no jurisdiction of the subject matter or the parties it is required to dismiss the case; Paiwich v. Krieswalis, supra; it must be kept in mind that the party who undertakes to prove that fact must do so in an orderly way and at a proper time by sufficient remedy. The plea in abatement interposed here is a collateral attack on this judgment. The court should not have regarded it as having any legal status. The face of the record imported jurisdiction in the court to render the judgment and extrinsic evidence attacking the judgment is not admissible in that circumstance. Lampson Lumber Co. v. Hoer, supra, 298; Coit v. Haven, 30 Conn. 190, 197-200. On the record itself, jurisdictional facts, such as service of the writ, are to be presumed. Lampson Lumber Co. v. Hoer, supra, 298. Accordingly, the judgment in this case must stand as a valid judgment until set aside by some direct proceeding brought for that purpose. Id., 299.
At the time the state filed its application for a wage execution, the judgment by default was valid. *Page 603 
It had not been stayed or enjoined. It had not been the object of a direct attack. The state was entitled to have the judgment enforced. The court's granting of the named defendant's motion to stay the execution of the wage attachment was therefore erroneous. Moreover, to grant the motion for stay on the day it was filed without giving the state the opportunity to be heard was clearly irregular. Winick v. Winick, 153 Conn. 294, 298. Reasonable opportunity to appear and be heard is the very least the state was entitled to. Ibid.
 There is error, the case is remanded with direction to grant the state's application for a wage execution.
In this opinion PARSKEY and SPONZO, Js., concurred.