RALPH I. TOLLES *vs.* GEORGE E. WINTON ET AL.,
EXECUTORS.

New Haven & Fairfield Cos., Oct. T., 1893.   ANDREWS, C. J., CARPEN-
TER, TORRANCE, FENN and BALDWIN, Js.

A chattel loses its character as such and becomes a part of the realty, when it is evident from an inspection of the property itself that a permanent accession to the freehold was intended to be made by the annexation of the article.

The paramount consideration is the intention with which the annexation was made; but in determining that intention the degree and permanency of the annexation, the nature and adaptation of the article annexed to the uses and purposes to which the realty was appropriated at the time of the annexation, and the relation of the party making the annexation to the realty, are of great importance and weight.

A steam engine placed upon a solid foundation of stone and cement in the basement of a building by the owner of the building in order to make

the upper stories available for tenants needing power, held to be a part of the realty; although the engine was disconnected from the boiler at the time of the sale of the real estate.

[Submitted on briefs November 15th—decided December 13th, 1893.]

ACTION to recover $500, paid by the plaintiff to the defendants' testator, upon a written agreement for the purchase of certain real estate, which agreement, the plaintiff claimed, the said testator refused to consummate; brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.;* facts found and judgment rendered for the plaintiff, from which the defendants appealed. The case is sufficiently stated in the opinion.

*Canfield & Judson,* for appellants (defendants).

*Stoddard, Bishop & Shelton,* for appellee (plaintiff).

FENN, J. This is an appeal by the defendants from a judgment rendered by the Court of Common Pleas in Fairfield County. The complaint contained the common counts, under which a bill of particulars was filed, as follows:—" To $500 cash paid to Andrew L. Winton by the plaintiff, upon an agreement for the purchase of certain real estate by the plaintiff from said Winton, which agreement the said Winton improperly failed and refused to consummate and carry out." The answer, a general denial, was accompanied by a counter-claim, which set up a contract for the conveyance of real estate, alleged a breach on the part of the plaintiff and claimed $1,000 damages. The court found that the plaintiff did refuse to consummate the contract, for the reason that the defendants, between the date of the contract and the time fixed for the final payment and the delivery of the deed, removed from the premises a steam engine thereon located, and sold and delivered the same to third parties, without the knowledge or consent and against the will of the plaintiff. And thereupon the parties were at issue, as to whether the removal of said engine from the premises legally justified the plaintiff in refusing to consummate the

contract, the plaintiff claiming that the engine was a part of the realty, which claim the court below sustained, and the defendants claiming that it was personal property.

This ruling of the court that the engine was a part of the realty, is the only matter before us for review. For, although the defendants now insist that even if the engine was a fixture, the plaintiff was not justified in refusing to consummate the purchase because of its removal, since its value was capable of exact appraisement the amount of which might have been deducted from the agreed purchase price of the realty, it is sufficient to say that no such question was made in the court below. Nor could it have been under the pleadings. Furthermore, the defendants are in no position to raise this question inasmuch as they sold the remaining portion of the real estate after the commencement of the present action but before the trial, thereby putting it out of their power to specifically perform, either wholly or in part.

The facts found by the court in reference to the engine were these :—" The land and buildings referred to in the contract consisted of a substantial three story and basement brick edifice, with the ground under and about the same, situated on Middle street in the city of Bridgeport. Said Winton had long owned the premises, and about five years before the contract was made and while owning the same, had occupied the first floor thereof as a feed store, and in order to make the upper stories available for tenants needing power, he placed in the basement thereof an engine and boiler, and connected the same by appropriate shafting and belting with the upper stories, and thereby supplied motive power to his tenants renting the same. Said building had not been constructed originally for the use of machinery, and the interior of the building was prepared by Winton, in the manner herein set forth, for the reception of the engine and boiler, together with the belting and shafting necessary to convey the power from the celler to the upper stories. No machinery was prepared for the use of power on the first floor, occupied by said Winton. The engine stood three or four feet from the boiler, and about two years before the

execution of the contract was disconnected from the boiler by unscrewing couplings, because the tenant who then occupied the upper part of the building desired to run a small engine, placed in the upper stories, which was run however by steam supplied by the boiler in the basement. The engine continued so disconnected at the date of the contract. The engine was set up and attached to the property in the following manner :—a cavity was dug in the basement floor, in which a solid foundation of stone and cement was laid, and in this grouting were imbedded bolts, which extended upwards, passing through a timber placed on the grouting in such a manner and location as to receive the engine. The engine was then placed on the timber, and the bolts passing through plates on the engine were capped by nuts screwed upon them, thus fastening the engine firmly to the timber and grouting. By unscrewing the nuts the engine could be lifted from the bolts, and removed without other injury to the building than the loss of the engine, but the bolts could not be removed without tearing up and destroying the grouting. The boiler was similarly fixed upon a foundation of grouting, and a pit was dug in the basement floor, in connection with the boiler for ashes."

In deciding the question thus presented it is unnecessary to do more than to refer, and that but briefly, to our own Connecticut cases. In *Capen* v. *Peckham*, 35 Conn., 92, 93, this court, by PARK, J., declared that while "no rule can be found of universal application that clearly defines the line where an article loses its legal quality as a chattel, and assumes that of real estate," yet "the great weight of authority is in favor of the doctrine that to constitute a fixture it is necessary that the article should be annexed to the freehold, as the name itself imports ; but there is great diversity of opinion in relation to the degree of annexation which is essential for this purpose." It is further said that many cases hold that such annexation " must be permanently made, so much so that the article cannot be removed without injury to the freehold." This however, though declared essential in a great majority of cases, is not held to be so in

all. " Millstones and water wheels used in milling estab-
lishments are universally conceded to be a part of the realty ;
still many of them could be removed without the least injury
to the freehold." Farm fences are also mentioned. It is
then said that another class of cases hold the true test of a
fixture to be " the adaptation of the article to the uses and
purposes to which the realty is applied, and no regard is had
to the character of the annexation." This rule is declared
to be too extensive in its application; and the court then
proceeds to suggest, as the nearest possible approximation to
a rule of universal application, one which requires annexa-
tion to the freehold, but considers the degree and permanency
in character of such annexation, as well as the nature and
adaptation of the article annexed to the uses and purposes
to which that part of the building was appropiated at the
time the annexation was made, as important solely by reason
of the bearing it may have upon the decision of the ultimate
question (to be determined from an inspection of the prop-
erty itself, and its view, in the light of surrounding circum-
stances) whether a permanent accession to the freehold was
intended to be made by the annexation of the article; thus
making such intention so determined the paramount consid-
eration. This case was followed by that of *Alvord Carriage
Mfg. Co.* v. *Gleason,* 36 Conn., 86, the same judge writing the
opinion and re-stating and applying the same rule of inten-
tion ; and the court, by the application of such rule, decided
that a factory bell placed in a tower built upon the factory for
the purpose, and a blower pipe conveying air from a blower
to a forge were part of the realty. Again, in *Stockwell* v.
*Campbell,* 39 Conn., 362, the same judge again writing the
opinion, this court, repeating and counting upon the same
rule, and saying distinctly that " physical annexation " need
not be such " as to require any actual disruption for its re-
moval," instancing the case.of doors and window blinds,
held a portable hot air furnace, placed in the cellar of a
dwelling house for the purpose of warming the house, and
set in a pit prepared for it in the bottom of the cellar where
it was held in place simply by its own weight, and also the

smoke pipe leading from the furnace to the chimney of the house, to be parts of the realty. And there are other cases in this state in accord with these decisions. But no further citation of authority seems requisite.

Applying the rule thus established to the case before us, it seems manifest that, looking at the property itself, taking into consideration the character of its annexation as recited, its nature, its adaptation to the uses and purposes to which the building was appropriated at the time the annexation was made, and the relation of the party making it to the property to which it was annexed, (such party being the owner,) a permanent accession to the freehold was intended to be made by the annexation of the article, and that by such annexation it became and was a part of the realty.

There is no error in the judgment complained of.

In this opinion the other judges concurred.