## THE WATERBURY CLOCK COMPANY *vs.* ALBERT A. IRION.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

An appellant cannot be injured by the refusal of the trial judge to make the language of his finding conform to that of the exhibits, provided such exhibits are referred to and made part of the finding. Under such circumstances this court will follow the exhibits, in so far as the language of the finding differs from them.

A motion to correct the finding in a particular point will not be considered by this court, unless it appears by the record that the evidence contained therein is all the evidence bearing upon that point.

In an action of trespass *qu. cl. fr.* tried upon a general denial, the title to the land is not in issue and the plaintiff, in order to maintain the action, must establish his actual, exclusive possession of the *locus*, or a constructive possession by proof of his title and the absence of actual, exclusive possession by another.

The deeds upon which plaintiff relied in the present case reviewed, and *held* not to support his claim of title to the *locus*.

In the present case the trespass complained of was the erection and

maintenance of walls along the sides of a stream for the distance of about one hundred feet and of a bridge or platform resting thereon. *Held* that in the absence of any evidence of actual possession by the plaintiff, the trial court was justified in finding that by erecting and maintaining the structure complained of the defendant was in possession of the *locus.*

Argued October 28th—decided November 29th, 1898.

ACTION in the nature of trespass *quare clausum fregit,* brought to the Superior Court in New Haven County and tried upon the general issue to the court, *Elmer, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the findings and rulings of the court. *No error.*

The complaint alleges that on July 1st, 1890, the plaintiff was possessed of certain lands in Waterbury, bounded north by land of plaintiff, south on Cherry street, and east and west on defendant's land ; that on said day the defendant unlawfully entered on said land, and erected and maintained, and still maintains, certain building and parts of buildings thereon and over the same.

The *locus in quo* is that part of the bed of a brook in Waterbury, called Great Brook, extending north from Cherry street about 100 feet. Cherry street, sometimes called Grove street, runs nearly east and west. North Main street running nearly north and south crosses Cherry street. The act of trespass complained of, was the erection and maintenance by the defendant of " a bridge or platform of timbers and planks over and across said brook for a distance of about 100 feet, supported by walls on either side of said strip of land covered by said brook."

Prior to 1861 the Waterbury Knitting Company owned not only the *locus in quo* but all of the land lying easterly of North Main street on the westerly side of said brook, and also the land adjoining said brook on the east, and was the original owner under whom all the parties claim title. November 7th, 1853, the Knitting Company conveyed to James Potter, land on the corner of North Main and Cherry streets, being 154 feet on North Main street and 120 feet on Cherry

street, and bounded north and east on grantor's land. February 1st, 1861, the Knitting Company conveyed to Potter land lying east of said corner lot, bounded north and east on grantor's land, west on grantee, and south on highway, and reserving to the grantors, their successors, etc., "the right to have Great Brook flow through said land without any hindrance or obstruction whatever, and so that the same shall enter said premises where it now does." February 3d, 1863, Potter reconveyed the last named tract to the Knitting Company. On the same day the Knitting Company conveyed to Whittall, Le Fevre & Co., all their said land, including the tract reconveyed by Potter, but not including the corner tract conveyed to Potter in 1853. Said deed bounded the grantee on the west by James Potter. On the same day Whittall, Le Fevre & Co. mortgaged said premises to the Waterbury Savings Bank to secure the payment of $5,500. December 13th, 1866, said Whittall, Le Fevre & Co. conveyed said premises, subject to said mortgage, to the Great Brook Company. In July, 1868, E. N. Kellogg & Co., Beach & Co., the Tolland County Bank, the Middletown Bank, and W. K. Strong & Co. levied their several executions, in the order named, against said Great Brook Company, upon the equity of redemption in said property, exhausting the whole equity, and leaving a deficiency as to W. K. Strong & Co. The Waterbury Savings Bank in October, 1868, acquired title by decree of foreclosure as against the Great Brook Company and W. K. Strong & Co., who were the parties defendant. The bank's certificate of title was filed November 19th, 1868. In February, 1869, E. N. Kellogg & Co., Beach & Co., the Tolland County Bank and the Middletown Bank, who had not been foreclosed, assigned their execution claims, and all right and title obtained by their liens, to A. J. Cameron, who claimed the right to redeem, and did redeem the Waterbury Savings Bank mortgage by paying the mortgage debt. February 25th, 1870, A. J. Cameron and James Cass conveyed to Franklin L. Curtis, trustee, "the upper water privilege, dam or reservoir, lying northerly on Cherry street, with land lying easterly of Great Brook, including the brook

and banks of Great Brook." July 16th, 1870, said Cameron conveyed to S. W. Kellogg a tract of land, the west boundary of which is described as a line five feet east of Great Brook. November 6th, 1871, said Cameron conveyed to S. W. Kellogg a tract of land which is described as a piece or strip of land lying in said town of Waterbury on both sides of Great Brook north of Cherry street, and between Cherry street and the United States Button Company, "being ten feet wide on the west bank of said brook, and five feet wide on the easterly side of said brook; subject to any rights that were conveyed by deed to F. L. Curtiss, dated February 25th, 1870." September 6th, 1880, Kellogg conveyed to F. B. Rice a tract of land east of Great Brook, described as bounding west on Great Brook and south on Cherry street, being 104 feet on Cherry street; "the front line is to be measured from the face of the wall of Great Brook inside the fence." July 8th, 1881, said Rice conveyed to the defendant Irion, a strip of land about 100 feet in length and about four feet in width, bounded west by Great Brook, east by land of grantor and south by Cherry street. The defendant Irion, as appears by the finding, had in 1879 acquired title to all the land conveyed to James Potter by the Knitting Company in 1853, except the northerly 54 feet thereof, his northerly line being 100 feet northerly from Cherry street.

The plaintiff claims title to the bed of Great Brook under a quitclaim deed from said A. J. Cameron, dated January 30th, 1890, in which the land conveyed is described as "that part of Great Brook and the banks of Great Brook, situated and being on the northerly side of Cherry street, . . . and being that part of the land set off to Cameron and Cass on execution against the Great Brook Company, July 13th, 1868."

The trial court found "that the said Irion (defendant) and his grantors had undisputed possession of the brook in question and the land lying westerly of the brook, from 1863 to the commencement of this action, and from 1881 to the date of this complaint he had possession of the brook, and the land both sides thereof; that within a short time after the convey-

ance by Rice to Irion in 1881, the latter widened and deepened the brook and erected face walls on both sides, and, it is admitted, built a bridge or platform of timbers and planks over and across said brook for a distance of about one hundred feet from Cherry street, . . . which was in existence at the time of bringing this action; that when Potter was seized and possessed of this land he had three stone steps leading from his land to the bed of the brook, and that his outhouses were built out over said brook and extended nearly to the easterly bank thereof; and during Potter's ownership a hedge stood westerly of said brook near the bank, and on the easterly border of his land."

Counsel for plaintiff moved for certain corrections of the finding, the refusal of the court to make which is among the reasons of appeal.

The substance of the remaining assignments of error is that the court erred in holding: That the defendant under the deeds to him had any title to the *locus in quo*; that the defendant and his grantors had undisputed possession of the *locus in quo* for more than fifteen years prior to the commencement of this action; that the acts of defendant's grantors in maintaining the outhouses and the steps were such acts as would give the defendant adverse title to the whole of the *locus in quo*; that the deeds to defendant and his grantors gave him title to the center of the brook.

*George E. Terry*, for the appellant (plaintiff).

*Edward F. Cole*, for the appellee (defendant).

HALL, J.  The deeds referred to by the court in its finding of facts are made a part of that finding.  The plaintiff was therefore not injured by the refusal of the court to change the language of the finding regarding the land conveyed by certain deeds, so as to conform to the descriptions in the deeds themselves.  It is evident that the court did not intend the statements complained of to be taken as accurate descriptions of the land conveyed, inasmuch as the full and correct

descriptions were to be found in the exhibits which were referred to. In so far as the language of the court differs from that of the exhibits, we have adopted the latter, which is conceded to be correct.

The plaintiff is not entitled to the other corrections asked for. The evidence before us does not show that the acts described in the motion to correct were the only acts of possession exercised by the defendant, and that evidence is certified only as "some of the evidence introduced on the trial."

The complaint is for a trespass to land. It alleges possession in the plaintiff, an act of trespass by the defendant, and claims damages. The answer is a general denial. This puts in issue but two questions: Did the defendant commit the act complained of? Was the plaintiff at the time of the alleged trespass in possession of the land in question?

The alleged act of trespass, namely, the erection and the maintenance by the defendant of the walls and platform upon the sides of and over the brook, having apparently been conceded, the sole question was that of the plaintiff's possession of the *locus in quo* at the time of the trespass; and the defendant not having pleaded title could not under a general denial prove title in himself as a defense. *Mallett* v. *White,* 52 Conn. 50; *Fowler* v. *Fowler,* ibid. 254; *Sutton* v. *Lockwood,* 40 id. 318. The burden of proving possession having by the general denial been thus imposed upon the plaintiff, two ways were open by either of which that fact might be established. The plaintiff might, by proof of acts of occupation, show an actual, exclusive possession of the *locus in quo* in itself at the time of the trespass, or show a constructive possession, by proving title in itself and the absence of actual exclusive possession by another. *Fitch* v. *New York, P. & B. R. Co.,* 59 Conn. 414, 422; *Church* v. *Meeker,* 34 id. 421, 422.

From the record before us it does not appear that the plaintiff proved, or attempted to prove, any fact showing an actual possession in itself, at any time, of any part of the *locus.* If it further appears from the record that the plaintiff failed to prove its title, or, if upon proof of title in the plaintiff, it appears that another was in the actual exclusive possession

of the *locus*, the plaintiff must fail, and the judgment as rendered must stand.

The trial court finds that the plaintiff claimed title under a deed from A. J. Cameron, dated January 30th, 1890. This is a quitclaim deed conveying the right, title and interest of the releasor in and to that part of Great Brook and the banks of Great Brook north of Cherry street, " being that part of the land set off to Cameron and Cass on execution against the Great Brook Company, July 13th, 1868." What interest in Great Brook and its banks was set off to Cameron, or Cameron and Cass, on execution against the Great Brook Company in 1868, we are not informed, as the execution is not before us. From the reservation in the second deed of the Knitting Company to Potter, February 1st, 1861, it seems clear that the *locus in quo* was not conveyed to Potter by the first deed to him in 1853, and therefore that the legal title to the bed of the brook passed to the Waterbury Savings Bank in 1863, by the mortgage deed of Whittall, Le Fevre & Co., grantees of the Knitting Company, and the equitable title to the Great Brook Company by their deed from Whittall, Le Fevre & Co. in 1868. By the levy of their execution against the Great Brook Company, Cameron and Cass could not have taken a legal title to any part of the *locus*, nor any title which would enable them to maintain this action against the mortgagees or their grantees. Assuming that the levy of such an execution was proved, it must have been made upon an equity of redemption in land subject to the $5,500 mortgage of the Waterbury Savings Bank, and which equity of redemption the court finds had already been exhausted by the levies of prior creditors of the Great Brook Company.

But if Cameron by levy of execution in 1868 acquired any interest in the bed of the stream, that interest, as appears by the record, was conveyed by him to either F. L. Curtiss, or to S. W. Kellogg, prior to his deed to the plaintiff. The first of these last named deeds, dated February 25th, 1870, purports to convey to Curtiss "land lying easterly of Great Brook, including the brook and banks of Great Brook." The two deeds from Cameron to Kellogg, dated respectively

July 16th, 1870, and November 6th, 1871, assume to convey: the first, land east of a line five feet east of the brook; and the second, a strip of land ten feet wide on the west, and five feet wide on the east bank of the brook, subject to any rights conveyed to Curtiss by the deed of February 25th, 1870. By these deeds the record title to the *locus in quo* became vested in either Curtiss or Kellogg, neither of whom, so far as we can discover from the record, has ever transferred his interest to the plaintiff, though we note a statement in the brief of counsel that the plaintiff derives title from Curtiss.

But were it true that Cameron acquired title to the *locus in quo* through the levy of the execution of Cameron and Cass against the Great Brook Company in 1868, and that he had not conveyed the title thus obtained to either Curtiss or Kellogg prior to his deed to the plaintiff, the plaintiff gained no title under the deed of 1890. The trial court has found that at that time the plaintiff's grantor was ousted by the possession of another. Unless, in reaching its conclusion that at the time the deed from Cameron to the plaintiff was executed the defendant was in possession of the *locus*, the court has committed some error of law, the deed under which the plaintiff claims, was void by § 2966 of the General Statutes. The court finds that for many years prior to the commencement of this action the defendant was in the undisputed possession of the brook and land on both sides thereof. The Superior Court has not adjudged the title to be in the defendant, as it could not properly do so under the pleadings.

In its reasons of appeal the plaintiff alleges that the court erred in holding, contrary to the law and evidence, that the defendant and his grantors had undisputed possession of the *locus in quo*, and in holding as a matter of law that by the acts of maintaining the outhouses over the stream, and the steps from the bank into the brook, possession was taken of the whole *locus in quo*.

The evidence from which the court found that the defendant was in possession, is not before us. It is not clear to us what law the plaintiff claims was violated by the trial court in finding the fact of possession. No objection appears to

have been made to evidence offered to prove possession. The finding does not disclose that any claim of law was made upon the argument, nor does it bear out the plaintiff's claims that the court based its finding that the defendant's grantors were in possession of the *locus,* upon the fact that they maintained the outhouses and steps.

The facts found are ample to sustain the decision of the trial court, that the plaintiff was neither in the actual nor constructive possession of the land in question at the time of the commission of the act of alleged trespass. The very ground of this action is the alleged interference with the plaintiff's possession by the entry of the defendant upon the *locus* and the erection and maintenance thereon and over the same, of a certain building. This structure was erected in 1881. In the absence of any evidence of actual possession by the plaintiff, the court was justified in holding that by the maintenance of this structure, under a claim of right, which is the trespass complained of, the defendant has been in the possession of the *locus* since the structure was erected.

There is no error.

In this opinion the other judges concurred.