ELIZA S. FOOTE *vs.* CHESTER A. BROWN ET AL.

Third Judicial District, New Haven, June Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The title to land specifically devised to a wife during her widowhood vests in her at once on her husband's death and carries with it a right to the immediate possession of the property; and such title and right of possession are sufficient to maintain an action in the nature of ejectment.

The fact that leases of the land so devised were signed by the administrator *c. t. a.*, who also collected and disbursed the rents and managed the property generally, is not conclusive evidence that he, and not the widow, was the one in possession, since other facts might satisfy the jury that he was merely her agent in all that he did.

Ownership of land is not established by proof of a mere paper chain of title, unless the plaintiff's possession or that of his grantors is shown; but evidence of his actual possession is unnecessary if the jury is satisfied, by documentary or other evidence, of ownership by his predecessors in title, since that carries possession with it, in the absence of any evidence that the land was in fact in the exclusive occupation of another.

Error ought not to be predicated on what is palpably the result of a mistake on the part of the stenographer in reporting the charge of the court.

The inadvertent interchange or use of the word "with" for "without" in a charge, affords no ground of appeal if the meaning of the court is clear from the context and general tenor of the instructions.

The subsequent correction in his charge of a mistake by the trial judge in referring to the date or contents of a certain deed in evidence, removes all cause of complaint on that score.

An appellate court will correct substantial errors, but it ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning.

In an action in the nature of ejectment, evidence of the conduct and admissions of one of the defendants, off the premises, is admissible as tending to show his participation with the other defendant in the latter's acts of disseizin.

An equitable title to land conveyed by an instrument in the nature of a deed or grant, will be presumed, after the lapse of eighty years or more, to draw to it the legal title.

The identity of the signers of such a document, as the original pro-
prietors of the land, as recited on its face, will also be presumed
after the lapse of such a length of time.

Declarations of a former owner of the land under whom the plaintiff
claims as a devisee are admissible in evidence under General
Statutes, § 705, in support of the latter's title.

Argued June 11th—decided August 3d, 1908.

ACTION to recover the possession of a tract of land, and
for damages, brought to the Superior Court in New Haven
County and tried to the jury before *George W. Wheeler, J.;*
verdict and judgment for the plaintiff, and appeal by the
defendants. *No error.*

The land in controversy is a strip of non-arable land
adjoining the seashore, known as Pipe Beach, containing
about one acre. Its chief value arises from the large
quantities of shells, seaweed and mud, which are cast
thereon by the sea, and have, as is claimed, a market
value and a substantial value for farm purposes. April 13th,
1849, George A. Foote, the plaintiff's husband, received
a deed of a nearby farm, and with it Pipe Beach. The
plaintiff claimed to show that Foote, at or about the date
of this conveyance, entered into the possession of both
the farm and said beach, and continued therein, using the
beach in connection with the farm and as a part of it,
until his death in 1878, and that his possession and use of
the beach was during all this time open, notorious, ex-
clusive, under a claim of right, and adverse. Foote left a
will, duly probated, which contained the following pro-
vision in favor of the plaintiff, who has remained un-
married: "Whereas, I have leased my farm on which I
now live to my son, William Todd Foote, for five years,
from the 1st of January, A. D. 1868, to the 1st of January,
1873, for five hundred dollars a year and other privileges
and perquisites mentioned in said lease, now therefore, my
will is that in case of my death my wife, Eliza Spencer
Foote, shall receive all the pay and enjoy all the privileges

which are secured to me in said lease: at the termination of said lease my said wife is hereby fully authorized and empowered to renew the same to my son, Wm. T. Foote, or in case of his death or refusal to renew the same, then she may lease the said farm to any other son or person as shall seem best for her and her children, as long as she remains my widow, and no longer."

Mrs. Foote was the executrix of the will until she resigned in 1897, when her son-in-law, Edward H. Jenkins, was appointed as administrator *c. t. a.* Upon his appointment an order of notice for the presentation of claims was made. Only one claim was presented, and that was one which Mrs. Foote had personally paid some years before, upon demand upon her. This claim was later paid to her out of the proceeds of the sale of the greater portion of the farm. No inventory of the estate has ever been filed, neither has any account been filed by either Mrs. Foote as executrix or Jenkins as administrator *c. t. a.* From the appointment of Jenkins as administrator in 1897 down to the sale of a portion of the farm in 1907, there was no money in the estate, and the income from the farm was insufficient at times to pay the taxes and repairs; and at the present time there is only between $100 and $200 in the estate.

When Foote died the farm was still under lease to his son William, and leases thereof to him were renewed until April 1st, 1887. Since that time it has been leased to other parties, the earlier leases being made by the plaintiff, and those since 1899 by Jenkins as administrator. The plaintiff claimed to show that all of the lessees used and occupied the beach as a part of the farm, taking shells, seaweed and mud therefrom for use on the farm, and selling a part thereof from time to time. Since the plaintiff's removal to New Haven, Jenkins has collected the rents, and disbursed the moneys thus received in the payment of taxes and repairs.

Mrs. Foote, after her husband's death, continued to live upon the farm until 1894, when she went to reside with her son-in-law in New Haven, and there she has continued. The plaintiff claimed to show that since her removal to New Haven she had continued to manage and lease the farm through her son-in-law, Jenkins, that he had done nothing but carry out her directions in the matter, that his signature on certain leases as administrator was the result of a misunderstanding and mistake on his part, and that he never in his capacity as administrator claimed to have, or had in fact, possession or control of said farm, including said Pipe Beach, and never received anything therefrom except as agent for Mrs. Foote and at her request.

The last lessee of the premises held a lease under the signature of Jenkins as administrator. Prior to the bringing of this action he released his interest, thereby acquired, to Jenkins, administrator. This, the plaintiff claimed to show, was done for the purpose of bringing the suit.

The plaintiff also claimed to show that both the defendants had unlawfully entered on the land in question and placed a building thereon, and that they were wrongfully continuing in possession thereof.

The only evidence introduced by the plaintiff as to the occupation and possession of Pipe Beach by the defendant Chester A. Brown, was a conversation between him and Jenkins, in which Brown told Jenkins that it was his building thereon, and that he had the right to keep it there, having obtained the permission of the selectmen, and that he refused to remove the same; and further, that he spoke to the selectmen to secure permission to place this building upon the beach. Said Chester testified, but did not deny said conversation, and said Chester and James G. Brown testified that the former asked permission of the selectmen as aforesaid.

The defendants offered evidence to prove, and claimed

to have proved, that said Pipe Beach had been used for over sixty years and up to the present time by the public generally, for purposes of getting seaweed, shells and mud, and in any other way they desired; that such use was open and visible, and that while said George A. Foote was in the occupation of his said farm, he had seen people using this beach and had not objected to such use; that the use of said Foote of said beach was the same as that of the general public, and that he did no acts thereon different from those of any other of the public who desired to use it; that in 1849 neither the predecessor in paper title of said Foote nor said Foote was in possession of said beach, but the possession was in the public and has since so remained; that the defendant Chester A. Brown, in company with the defendant James G. Brown, asked permission of one of the selectmen of Guilford to put a small building on the beach; that after securing the same, said James, in 1903, placed a small building thereon and has used the same ever since; and that the defendant Chester A. Brown neither owns nor has occupied said building since it was placed on the beach.

The plaintiff having offered evidence upon which to base a title by adverse possession, the defendants advanced the claim that title could not be so acquired as against the public whose right they asserted. They claimed that the beach had been public or common lands and so used by the public from time immemorial.

To meet one aspect of the situation thus presented, the plaintiff offered in evidence, from the town records, a vote passed April 7th, 1800, as follows: "Voted, that the Town are Willing the Proprietors Should Grant their Lands at the pipe Beach to Elijah Leete"; and also the following from the town records: "We, the subscribers, being Proprietors in the pipe Beach, lying at the Lower part of the Long Cove, our right being small, and the prospect being over for getting shells, and finding it our duty to Relin-

quish our Claim to the Beach, for & in Consideration of having the Cove Drained; & Whereas, Elijah Leete hath undertaken to drain sd. Cove, We do give our Right to sd. Leete for his Encouragement to Drain sd. Cove. David Bishop, Jonathan Bishop, Jared Bishop, Bela Cruttenden, Timothy Cruttenden, Abner Stone, Abraham Stone, Sam'l Robinson, William Hubbard, Daniel Hubbard. Recd. for Record March 23d, 1818, & is Truly Entered. Attest: Sam'l Fowler, Regr."

The court instructed the jury that there was nothing in the evidence to justify a finding that the land in question was public land or so used by the public from time immemorial, and also that if the premises referred to in the records above recited should be found to be identical with the land in dispute, the legal effect of the instrument recorded March 23d, 1818, was to vest in Leete the interest of these proprietors.

William T. Foote, a son of George A. Foote, having been called as a witness for the plaintiff, was inquired of as to the use made by his father of the beach, and was then permitted, against objection, to testify to certain declarations made by his father, to the effect that the beach was a valuable part of his farm, worth half of the regular cost, and that there was always a time when one could go there and get manure.

The defendants made no claim to title to the beach in themselves, but justified their acts solely under the public right therein and permission obtained from the selectmen of the town.

*Robert C. Stoddard,* for the appellants (defendants).

*Henry C. White,* for the appellee (plaintiff).

PRENTICE, J. The reasons of appeal present in various forms certain questions as to the right of the plaintiff to

maintain her action, even upon the assumption that the facts are as claimed by her. It is asserted, and was unsuccessfully asserted below, that her action must fail for want of a sufficient title, accompanied with the present right of possession, being shown in her: (1) because the will of her husband conferred upon her no such title as would enable her to maintain her action; (2) because whatever title the will may have set out to her, it never vested in her by reason of the incompleteness of the probate proceedings and the condition of the testator's estate as shown, or at least that the right of possession was for these reasons never hers; and (3) because the acts of Jenkins in leasing and managing the property, either alone or in connection with the status of Foote's estate, show that the possession of the premises was that of Jenkins as administrator *c. t. a.* and never that of the plaintiff in her own right.

The first of these reasons is insufficient. "The action of disseizin will lie in all cases in favor of a man who has an interest in lands, and is entitled to the possession of them, whether it be an estate in fee, for life, or for years, or for an interest in the herbage, or growing crops; but the right must be of some duration, and exclusive." 1 Swift's Digest, s. p. 507. Upon the former appeal, with this will before us, we said that the plaintiff was an owner of land in possession, that her grievance against the defendant was an unlawful entry and occupation of land, and that her redress was possession and damages. *Foote* v. *Brown*, 78 Conn. 369, 378, 62 Atl. 667.

The title which came to Mrs. Foote under her husband's will vested in her immediately upon his decease. *Brewster* v. *McCall's Devisees*, 15 Conn. 274, 289. The devise being a specific one and of the character it was, there went with it the right to the immediate possession of the property. General Statutes, § 362; *Merwin* v. *Morris*, 71 Conn. 555, 573, 42 Atl. 855, The vesting of the plaintiff's title, to-

gether with the right of possession, was not in suspension during the settlement of the estate of the testator, nor delayed by the fact that the property might be wanted for the payment of debts, as it was not in fact. *Griswold v. Bigelow,* 6 Conn. 258, 263.

The action of Jenkins in signing leases as administrator, and in collecting the rents, disbursing the rent receipts and managing the property generally, cannot be said to show conclusively that he and not she was the party in possession. Those features of the situation were simply facts to go, with their explanation and any other pertinent facts, to the jury for the determination of the question of fact involved. They were properly submitted to the jury, and the issue found in favor of the plaintiff's contention that she was Jenkins' principal in all that he did, and that his acts indicative of possession were her acts.

The plaintiff, in support of her title to the beach, offered in evidence deeds running back in a continuous chain to 1828, and direct evidence that the parties in this chain of title had been in occupation and open, actual and exclusive occupation as their own since 1852 during the ownership of Foote. No direct evidence of occupation at an earlier date by any person in this line of title was presented. Upon this evidence the plaintiff's claim was that a record title to the beach was established in George A. Foote, and if not, that one by prescription was shown. The court, after calling the jury's attention to this dual claim, proceeded to instruct them as follows:—

"It is the law of this State that ownership of real property carries a right of possession as much as the ownership of personal property, and ownership in one case draws after it possession as much as in the other. The possession involved in the fact of ownership is sufficient, if the land was not in the actual exclusive occupation of another. A mere paper chain of title in the plaintiff does not establish his ownership of the land, unless his possession or

that of his grantors is shown. But evidence of actual possession is unnecessary if the jury is satisfied, by documentary or other evidence, of ownership by the plaintiff's predecessors in title, since title thus established draws with it possession in the absence of any evidence to the contrary."

To the last portion of these instructions the defendants object. They say, that in view of their claim that the public was in possession in 1849, when Foote took his deed, and that his grantor was out of possession, the jury must have been misled into the belief that he acquired title by his deed by the mere fact of its being executed and delivered.

The instructions were in harmony with the repeated declarations of this court, and correct. *Dawson* v. *Orange*, 78 Conn. 96, 107, 61 Atl. 101; *Merwin* v. *Morris*, 71 Conn. 555, 573, 42 Atl. 855; *Waterbury Clock Co.* v. *Irion*, 71 Conn. 254, 259, 41 Atl. 827; *Noyes* v. *Stillman*, 24 Conn. 15, 21; *Bush* v. *Bradley*, 4 Day, 298, 306. But the court did not stop with them. It immediately took up the defendants' claim from the situation shown, and gave such instructions thereupon in addition to those recited, that the jury could not have been misled in the way suggested.

In the course of its charge the court read a somewhat extended extract from the opinion in *Carney* v. *Hennessey*, 74 Conn. 107, 111, 49 Atl. 910, upon the subject of title by prescription. In the record this extract is made to contain the word "with," where "without" was the word in the original, and the word plainly intended. This portion of the charge related to a material matter, and the instructions as thus framed are assigned as error. The form which the instructions are thus made to assume is so palpably the result of a mistake on the part of the stenographer and not of the court, that error ought not to be predicated upon it. Furthermore the meaning of the court was too plain to be mistaken, and the general tenor of the charge such that

the jury could not have been misled by an inadvertent interchange of words, if one there was.

During the charge the court made an error in respect to the contents of a deed of a certain date, confusing that deed with an earlier one. This error was later corrected, and a correct statement made. The matter involved in the error was one of trifling consequence. Had it been of more serious importance the correction of the error would have removed all cause for complaint. If our jury system is to continue to be a practical, working one, and productive of reasonably satisfactory results, it must be given a chance to operate within human limitations as respects both judge and jury, and have reasonable presumptions applied to its operation. Substantial errors will be committed for which a remedy must be given, but an appellate court ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning.

The defendants complain of the charge in so far as it relates to a recovery against the defendant Chester A. Brown, saying that the jury were told, in substance, that a verdict could be rendered against him if it was found that he, in conversation, told Jenkins that he was occupying the land. What the court did do, and properly do, was to receive evidence of said Brown's admissions and his conduct, off the premises, as tending to establish a participation by him with James in the acts of disseizin, and to leave the question of such participation by him to the jury, with proper instructions for their determination. The language of the court upon this point was as clear and distinct as it well could be.

The instructions of the court, that the effect of the vote of the town and of the instrument recorded March 23d, 1818, purporting to be signed by the proprietors, was to convey to Leete their interest in Pipe Beach, was not

prejudicial to the defendants, if not strictly accurate. Upon the trial no claim was made, so far as appears, that the instrument, not being executed as required of conveyances of land, was not sufficient to give Leete title. It is now embodied in one of the reasons of appeal. Although the instrument may not have been sufficient to convey the legal title, it was given for an expressed consideration, and conveyed an equitable title which, it will be presumed, later drew to it the legal title.

It is, however, now urged that the identity of the signers of this writing as the proprietors is not established. This claim was not presented below, and therefore is not fairly before us. If it were, its answer would be found in the application of the maxim, *ex diuturnitate temporis omnia præsumuntur esse solemniter acta. Dawson* v. *Orange,* 78 Conn. 96, 118, 61 Atl. 101; *Fowler* v. *Savage,* 3 Conn. 90, 98. "God forbid, that ancient grants and acts should be drawn in question, although that cannot be shown, which was at first necessary to the perfection of the thing." *Fowler* v. *Savage, supra.* "Antiquity of time fortifies all titles, and supposeth the best beginning the law can give them." *Ellis* v. *Mayor,* 15 C. B. N. S. 52, 77.

The declarations of George A. Foote, testified to by his son, were admissible under § 705 of the General Statutes. The plaintiff received her title as the devisee of the declarant, her husband. *Lockwood* v. *Lockwood,* 56 Conn. 106, 110, 14 Atl. 293; *Pixley* v. *Eddy,* 56 Conn. 336, 340, 15 Atl. 758; *Baxter* v. *Camp,* 71 Conn. 245, 252, 41 Atl. 803.

The remaining matters involved in the reasons of appeal are without merit and do not require discussion.

There is no error.

In this opinion the other judges concurred.