ELIZA J. M. RADICAN vs. PHILIP F. HUGHES.

First Judicial District, Hartford, January Term, 1913.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Paragraphs of the proposed or draft-finding marked "proven" are to be regarded as parts of the finding.

To constitute a fixture it must appear from all the circumstances that a permanent accession to the freehold was intended by the annexation of the article in question; for the intention of the parties is the controlling consideration in this class of cases.

The defendant purchased a small tool-house which he placed in part upon land owned by his father. This location was intended to be temporary, and was made with the father's knowledge without any objection from him or any one else, and under such circumstances as to imply a license. The structure was easily removable without damage to the premises. *Held* that as between the defendant and his father the law would imply an agreement that the tool-house should remain the personal property of the defendant, and be removable by him.

The defendant continued to use and occupy the tool-house until his father's death, and thereafter until the settlement of the estate, under such circumstances as to constitute him a tenant at will. Upon the settlement of the estate the land upon which a portion of the tool-house stood was distributed to the plaintiff as devisee. She then objected to the defendant's use of the land, and later notified him to vacate; whereupon he removed the building. Up to the time of removal he continued in actual, exclusive possession. In an action in the nature of trespass *qu. cl. fr.* it was *held:*—

1. That the plaintiff could not recover for a trespass, since it appeared that the defendant's entries were lawful.

2. That she could not recover for a conversion of the tool-house, since

that had remained the defendant's property by a title existing independently of his tenancy.

One who enters upon the land of another as tenant at will and erects a building under an implied promise that it shall remain his personal property, does not lose his title to the building merely because he fails to remove it within a reasonable time after the termination of his tenancy, even though his right of removal may have terminated.

A license to enter upon and use land may be inferred from the acts of the parties, from their relations, and from the exigencies of the case.

One who enters upon, uses and occupies land, with the consent and permission of the owner, but for no definite time, is a tenant at will.

In actions in the nature of trespass *qu. cl. fr.* tried under a general denial, the alleged wrongful entry and not the title to the land is the gist of the cause of action; accordingly, the plaintiff must establish either his actual, exclusive possession of the locus, or a constructive possession by proof of title and the absence of actual, exclusive possession by another.

Argued January 8th—decided March 11th, 1913.

ACTION to recover damages for the defendant's alleged wrongful entry upon the plaintiff's land, for injuries thereto, and for the removal therefrom of a certain building, brought to and tried by the Court of Common Pleas in Hartford County, *Coats, J.;* facts found and judgment rendered for the plaintiff for $155, and appeal by the defendant. *Error in part.*

The complaint contains five counts, each of which alleges an unlawful entry upon the plaintiff's land. The counts allege various acts of trespass by the defendant in the occupation and removal of a certain building upon the plaintiff's land, one count being for taking, carrying away and converting to the defendant's own use such building belonging to the plaintiff. The answer was a general denial.

The plaintiff and defendant are children of Thomas Hughes, late of Hartford, now deceased. In 1876 Hughes purchased of one Seymour a lot of land in Hartford on the west side of Zion Street, with a frontage of two hundred and forty-eight feet on Zion Street

and a depth of two hundred feet. At the same time and from the same grantor Hughes obtained a right of way over land next south of the parcel of land above described. Hughes lived in a house upon this tract of land, which he purchased of Seymour, until his death in August, 1899. By his will he gave the life use of all his property to his wife, Sarah Hughes. Sarah Hughes died in 1906. By the terms of the will of Thomas, the plaintiff, after the death of her mother, Sarah, acquired title to a portion of this land. The parcel of land which the plaintiff so acquired is bounded fifty feet on Zion Street and is two hundred feet deep. The plaintiff's land is at the southerly end of the parcel purchased by Hughes of Seymour, and is bounded south on the land over which Thomas had a right of way.

The land over which the right of way was located was purchased by the defendant some time in the early part of 1908.

The defendant, as executor of the will of his father, Thomas, duly settled the estate of Mr. Hughes and rendered his final administration account March 12th, 1908. At this time there was partly on the plaintiff's lot, which came to her by will of Thomas Hughes, and partly on the defendant's land, a tool-house eighteen feet long, fourteen feet wide, and about seven feet high to the eaves. This tool-house was purchased and moved upon this land by the defendant in February, 1895. The easterly side of this tool-house rested on the surface of the earth and the westerly side was supported by blocks resting on the ground. In buying this tool-house it was the defendant's intention to locate it wholly on land of his own. It was not so located because of difficulty in reaching his own land. The defendant had no agreement with his father as to the occupation of his land by a portion of the building, but Thomas Hughes never objected to such occupation.

From February, 1895, until the death of Thomas Hughes, the defendant lived with his father in the house standing on this land.

The defendant used this building for the storage of his quarrying tools and other personal property, from the time he left it on his father's land in February, 1895, until he removed it in April, 1910. Aside from the use of this land for a tool-house by the defendant, the land now owned by the plaintiff was occupied by Thomas Hughes until his death; then by his widow, Sarah Hughes, as life tenant, until her death in 1906; and after her death by the defendant as executor of the estate of Thomas Hughes, until the settlement of the estate in March, 1908.

From March, 1908, to April, 1910, the plaintiff made but little use of the land, but claimed the title and right of possession thereof.

The defendant claimed no title to that strip of the plaintiff's land where a portion of the building stood, except such as is to be inferred from the use of the tool-house as herein set forth. No person ever made an objection to the defendant's use of this land for a tool-house until March, 1908, when the plaintiff objected to such use. Shortly thereafter the defendant requested the plaintiff to lease him her land where a portion of the building stood, which she refused to do.

April 14th, 1910, the plaintiff sent by mail the following notice: "Hartford, April 14, 1910. Philip F. Hughes: My lot on Zion Street is not for rent. I understand you are trespassing upon it daily and that you have hens and other things in my building. I hereby notify you to remove the hens and other personal property and keep off my land and out of my building or I shall sue you for trespass. Respectfully, Mrs. Elizabeth Radican, 75 Glendale Ave."

This notice was received by the defendant before April 23d, 1910, when he removed the building.

Upon these facts the trial court made the following memorandum of judgment: "The defendant having allowed the tool-house to remain on the land, now of the plaintiff, for a period of more than fifteen years after he had placed it upon the land, he lost the right to remove the same." Judgment was rendered for the plaintiff for $155. The principal item for which damages were assessed was for the loss of that portion of the plaintiff's building standing upon her land.

The substance of the assignment of error is that the court erred in holding that the defendant had lost the right to remove the tool-house described in the complaint; that the plaintiff had acquired title to the tool-house upon all the facts shown; in ruling that so much of said tool-house as stood on the plaintiff's land was a part thereof.

The defendant also seeks the correction of the finding by incorporating certain paragraphs of his draft-finding marked "proven" by the trial judge.

*Stewart N. Dunning,* for the appellant (defendant).

*Sidney E. Clarke,* for the appellee (plaintiff).

RORABACK, J. The motion to correct was unnecessary, as paragraphs of the draft-finding marked "proven" are to be regarded as a part of the finding. *Grievance Committee* v. *Ennis,* 84 Conn. 594, 610, 80 Atl. 767.

The plaintiff contends that from the facts appearing of record this building was a fixture and a part of the realty owned by her. This proposition presents the controlling question in the case as it was presented to this court.

The doctrine of fixtures, by which the nature and legal incidents of the property must be determined, rests upon a course of judicial decisions made at different times, under a variety of circumstances, and running into numerous distinctions arising out of the peculiar relation of the parties and the peculiar circumstances of each particular case; so that it has been found extremely difficult to reduce this branch of the law to any uniform system. *Tolles* v. *Winton*, 63 Conn. 440, 443, 444, 28 Atl. 542; *Morey* v. *Hoyt*, 62 Conn. 542, 546, 26 Atl. 127. There are certain general principles, however, which have been well established. In the case of *Capen* v. *Peckham*, 35 Conn. 88, 94, this court held: "That it is essential to constitute a fixture that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaption of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article."

"This rule, which requires a physical annexation of the article to the building, we consider well settled, but the annexation need not be such as to require any actual disruption for its removal. It may be attached to the building by mere adjustment of construction and putting in place, as in the case of doors and window blinds, which are obviously a part of the building, though attached only by hinges, or it may be held in a place prepared to receive it, by its mere size and weight." *Stockwell* v. *Campbell*, 39 Conn. 362, 364, 365. The controlling consideration is the intention with which the annexation is made; and in determining that intention

the degree and permanence of the annexation, the nature and adaptation of the article annexed to the uses and purposes to which the realty was appropriated at the time of the annexation, and the relation of the party making the annexation to the realty, are of importance and weight. *Alvord Carriage Mfg. Co.* v. *Gleason,* 36 Conn. 86, 87; *Stockwell* v. *Campbell,* 39 Conn. 362, 364, 365; *Tolles* v. *Winton,* 63 Conn. 440, 444, 28 Atl. 542; *Morey* v. *Hoyt,* 62 Conn. 542, 559, 26 Atl. 127.

In this connection it should be noted that the intention to be sought is not the undisclosed purpose of the actor, but the intention manifested by his actions. In cases of this kind every fact and circumstance should be considered which tends to show what intention is properly imputable to him who located the article in position. *Equitable Guarantee & Trust Co.* v. *Knowles,* 8 Del. Ch. 106, 131, 67 Atl. 961.

It appears that the defendant purchased the building in question with the intention of locating it wholly on his land. Its location in part upon his father's land was intended by the defendant to be temporary. At this time the defendant was a member of his father's family, and it does not appear that he had an express agreement as to the occupation of the land when he located the building. In this connection it is important to note that Thomas Hughes never objected to such occupation, although he lived on this lot several years thereafter.

In the absence of express contract, the law often implies a license from the nature of the transaction, and when the circumstances authorize the assumption that such was contemplated by the parties. The implied promise in such case is such as justice would dictate under the particular facts presented to the court. *Lakin* v. *Ames,* 64 Mass. (10 Cush.) 198, 221. A license may be inferred from the acts of the parties, from their

relations, and from the exigencies of the case. Where families are on intimate terms, and have long been in the habit of visiting each other, and crossing the grounds without objection, these facts will justify the jury in finding an implied license. *Martin* v. *Houghton*, 45 Barb. (N. Y.) 258, 31 How. Pr. 82.

Upon the facts now before us, it is fair to assume that Thomas Hughes, the father, authorized the defendant to locate the building upon land now owned by the plaintiff. It has been held that when the landowner consents to the placing of the building on his land by another without an express agreement as to whether it shall become a part of the realty or remain personal property, an agreement will be implied that it is to continue personal property. 14 L. R. A. (N. S.) 439, note, and cases cited on pages 439 and 440. The building was not annexed to the land or anything appurtenant thereto. Its size and construction were not such as to render it impossible to remove it. Its proper removal would not injure the premises. It was not adapted to or necessary for the use and enjoyment of the land upon which it stood. As between Thomas Hughes and his son, the defendant, this building remained the property of the defendant and was removable by him.

When one enters on land, to use and occupy it, with the consent and permission of the owner, but for no definite time, he is a tenant at will. 1 Swift's Digest, s. p. 90; *Gould* v. *Thompson*, 45 Mass. (4 Met.) 224, 228; *Cheever* v. *Pearson*, 33 Mass. (16 Pick.) 266, 271. Such an estate, however, is revocable, not only at the will of the owner, but by his death, or by alienation or demise of the land by him, and by whatever should deprive him of the right to do the acts and to give permission to do them. *Clapp* v. *Boston*, 133 Mass. 367, 368. The death of Thomas Hughes, in 1899, operated in law as a determination of the defendant's tenancy at will,

and under ordinary circumstances the defendant should have exercised his right of removal within a reasonable time. But it appears that from 1899 to March, 1908, the owners of the estate of Thomas Hughes made no objection to the presence of the building and its use by the defendant on the land where it stood; and it may fairly be inferred that they impliedly assented that the defendant might continue in possession under the same conditions which had existed between him and his father.

On March 12th, 1908, the defendant, as executor of his father's estate, obtained a certificate of distribution, whereby the plaintiff had set to her the parcel of land upon which the building in part was then located. Until this time the defendant had been occupying this land under a license as a tenant at will. This tenancy terminated upon the final distribution of the estate, when the plaintiff had the right of possession to the lot of land where the building stood.

It is not clear on what authority the court below found that the defendant was liable in damages for the removal of the building. His right to the building was not derived from the license, but existed in him from a separate and distinct title, the validity of which, between the parties to this case, was not dependent upon an interest in the land. Although he may have lost his right of removal, yet he remained in possession of the building. He did not abandon it, as the plaintiff now contends, but continued his occupation and possession until he removed it in 1910.

The rule which governs as between vendor and vendee is not controlling between the parties to this action. The plaintiff, as devisee, took her interest in the premises subject to all the legal rights of the former owner therein, and she must be presumed to have known them and assented thereto.

As between the defendant and his father, this building was personal property with the right of removal. As between the parties to this action, nothing had taken place since the building was placed upon the father's land to change its character from one species of property to another. Assuming that the defendant's right of removal had terminated, it cannot be said that he had forfeited his right to the building.

The gist of the plaintiff's causes of action is the alleged unlawful entries upon the plaintiff's land by the defendant. In actions of this character, tried under a general denial, the title to the land is not in issue, and the plaintiff, in order to maintain the action, must establish his actual, exclusive possession of the *locus*, or a constructive possession by proof of his title and the absence of actual, exclusive possession by another. *Waterbury Clock Co.* v. *Irion*, 71 Conn. 254, 262, 41 Atl. 827. It appears that when the acts complained of were done, the defendant had not been dispossessed, nor had he abandoned or surrendered his possession of this building and the land upon which it stood. In the absence of any evidence of actual possession by the plaintiff, the trial court should have found that by the maintenance, occupation, and removal of this structure under a claim of right, the defendant had been in the possession of the *locus* since the building was erected thereon. *Waterbury Clock Co.* v. *Irion*, 71 Conn. 254, 262, 41 Atl. 827. Under such circumstances the defendant's removal of the tool-house was not unlawful.

The amount of the judgment is $155, and it appears from the finding that the sum of $125 was awarded the plaintiff as damages for the removal of the tool-house. To the extent, therefore, of $125 the judgment is erroneous. As the appeal does not question the correctness of the trial court's action in awarding the

additional $30, the judgment to that amount was justified.

There is error, the judgment is set aside and the cause is remanded for the rendition of a judgment in favor of the plaintiff for $30.

In this opinion the other judges concurred, except HALL, C. J., who concurred in the result, but died before the opinion was written.